Sidney L. THAYER, Appellant,

v.

Anthony J. PRINCIPI, Secretary of
Veterans Affairs, Appellee.

No. 98-1782.

United States Court of Appeals
for Veterans Claims.

Argued July 24, 2001.

Decided Sept. 4, 2001.

Robert V. Chisholm, of Providence, RI,
for the appellant.

Adam K. Llewellyn, with whom Leigh A.
Bradley, General Counsel; Ron Garvin,
Assistant General Counsel; Michael A.
Leonard, Deputy Assistant General Coun-
sel, all of Washington, DC, were on the
pleadings, for the appellee.

Kenneth M. Carpenter, of Topeka, KS,
for Herbert Dollar as amicus curiae.

Before KRAMER, Chief Judge, and
HOLDAWAY and STEINBERG, Judges.

STEINBERG, Judge:

Before the Court is the appellant's
March 6, 2000, application, through coun-
sel, for attorney fees and expenses in the
amount of $4,862.73 pursuant to the Equal
Access to Justice Act, 28 U.S.C. § 2412(d)

(EAJA). The Secretary filed a motion to dismiss the EAJA application, the appellant filed a response in opposition, and the parties and amicus curiae have filed additional pleadings pursuant to supplemental briefing orders issued by the Court. For the reasons that follow, the Court will deny the appellant's application.

## I. Background

The appellant appealed, through counsel, a May 1998 Board of Veterans' Appeals (Board or BVA) decision that denied as not well grounded, under 38 U.S.C. § 5107(a) as it then existed, his November 1994 claim for Department of Veterans Affairs (VA) service connection for schizophrenia on the ground that he had failed to provide medical evidence of a nexus between his claimed condition and his service in the U.S. Army. On November 9, 1999, while the appeal of the May 1998 BVA decision was being litigated before the Court, a VA regional office (RO) awarded the appellant service connection for schizophrenia based on his having submitted new and material evidence of medical nexus, and assigned an effective date based on the November 1994 claim that had been denied by the Board in the May 1998 BVA decision on appeal to the Court. On February 15, 2000, the Court dismissed the appeal because the November 1999 VARO award of service connection for schizophrenia mooted the appeal of the Board's denial of service connection for that same condition, in that the RO's award provided all of the relief that could have been afforded based on the claim at issue in that appeal.

On March 6, 2000, the appellant, through counsel, filed the EAJA application. The Secretary filed a motion to dismiss, asserting that the Court lacked jurisdiction over the EAJA application, and the appellant filed a response to the Secretary's motion. On August 10, 2000, the Court denied the EAJA application based on the fact that the underlying appeal had been dismissed for lack of jurisdiction.

On August 29, 2000, the appellant filed a motion for a panel decision; the current panel was assigned to the case and, on November 8, 2000, withdrew the August 10, 2000, single-judge order and ordered the parties and invited amicus curiae to file supplemental memoranda. *Thayer v. Gober*, 14 Vet.App. 181 (2000) (per curiam order). After those responses were filed, the United States Supreme Court issued its opinion in *Buckhannon Board and Care Home v. West Virginia Dep't of Health and Human Resources*, in which that Court stated: "[W]e hold that the 'catalyst theory' is not a permissible basis for the award of attorney's fees under the [Fair Housing Amendments Act of 1988], 42 U.S.C. § 3613(c)(2) [ (FHAA) ], and [the Americans with Disabilities Act of 1990], 42 U.S.C. § 12205 [ (ADA) ]." *Buckhannon*, 531 U.S. 1004, 121 S.Ct. 1835, 1843, 149 L.Ed.2d 855 (2001). On July 17, 2001, the Court ordered the parties to file supplemental memoranda addressing *Buckhannon*. Oral argument was held on July 24, 2001, and the parties and amicus curiae have filed responses to the Court's July 2001 briefing order.

## II. Analysis

The EAJA provides:

(d)(1)(A) Except as otherwise provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ..., brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

(B) A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action,

submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection.... The party shall also allege that the position of the United States was not substantially justified.

28 U.S.C. § 2412(d)(1)(A), (B).

### A. Secretary's Motion to Dismiss for Lack of Jurisdiction

■ The Secretary has filed a motion to dismiss the EAJA application; he asserts that the Court lost jurisdiction over the "civil action", 28 U.S.C. § 2412(d)(1)(A), in February 2000 when it dismissed the appeal as moot. In his motion to dismiss, the Secretary relies on three cases, *Hudson v. West*, 13 Vet.App. 470 (2000), *vacated and remanded sub nom. Hudson v. Principi*, 260 F.3d 1357 (2001); *Kawad v. West*, 12 Vet.App. 61 (1998) (per curiam order), and *Heath v. West*, 11 Vet.App. 400 (1998), all of which dismissed EAJA applications filed as to appeals over which the Court had lacked jurisdiction. In the since-withdrawn August 2000 single-judge order, the Court denied, but did not dismiss, the appellant's EAJA application, thus implicitly denying the Secretary's motion to dismiss. *See Maddalino v. West*, 13 Vet.App. 475, 477 (2000) (denying, not dismissing, EAJA application filed pursuant to petition for writ that Court had dismissed as moot after finding that "all of the relief sought had been provided").

As to this jurisdictional question, the full Court recently awarded EAJA fees in *Cullens v. Gober* to an appellant whose underlying appeal had been dismissed because a settlement agreement had been entered into by the parties and the parties had filed a joint motion to dismiss the appeal as moot. *Cullens*, 14 Vet.App. 234, 244 (2001) (en banc). From the standpoint of the Court's jurisdiction over the EAJA

application, the situation presented in *Cullens* does not differ in any significant way from the instant case, in which the underlying appeal was also dismissed as moot, and thus this panel is bound by the full Court's actions in *Cullens*. *See Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1992) (panel decisions constitute "binding precedent" unless overturned by en banc opinion of this Court or decision of U.S. Court of Appeals for the Federal Circuit (Federal Circuit) or Supreme Court).

Even if *Cullens* did not fully resolve the jurisdictional question presented by the Secretary's motion, we note the following as to the authorities relied upon by the Secretary. In *Hudson v. West* and *Heath*, both *supra*, the Court had **never** had jurisdiction over the actions that had served as the basis for the EAJA applications at issue, whereas in the instant case the Court had jurisdiction over the matter for more than a year before the RO granted the benefit sought on appeal. Moreover, to the extent that *Hudson* might have served as a precedent at the time that the Secretary filed his response, the decision has since been vacated on appeal. *Hudson v. Principi*, *supra* (vacating this Court's opinion, but not addressing whether Court must have jurisdiction over underlying merits adjudication in order to have jurisdiction over subsequent EAJA application); *cf. Burkhardt v. Gober*, 232 F.3d 1363, 1368 (Fed.Cir.2000) (finding no EAJA jurisdiction in case where court never had jurisdiction over underlying claim). In *Kawad*, *supra*, the Court dismissed an EAJA application that had been filed on behalf of a deceased appellant, who, by having died prior to the Court's disposition of the merits of his case, had lost his standing to litigate before this Court. *See Landicho v. Brown*, 7 Vet.App. 42, 46–49 (1994) (holding that substitution by party claiming accrued benefits under 38 U.S.C. § 5121(a) is not permissible in this Court

where appellant-veteran dies while BVA denial is "pending" here on appeal); *see also Zevalkink v. Brown*, 102 F.3d 1236, 1243–44 (Fed.Cir.1996) (expressly agreeing with this Court's holding in *Landicho* ). Hence, the panel agrees with the action taken by the single judge as to his implicit denial of the Secretary's motion, and will likewise deny the Secretary's motion.

Finally, the appellant argues that as a consequence of 38 C.F.R. § 3.156(b) (2000), under which an award of service connection based on the presentation of new and material evidence may be assigned an effective date based on the date of the claim that was previously denied when "a timely appeal [of that denial] has been filed", the Court has jurisdiction. Because we otherwise find jurisdiction, we do not address that § 3.156(b) argument.

### B. "Prevailing Party" Status

As noted in part II.A., above, the EAJA mandates that "any court having jurisdiction" over a "civil action" that leads to the filing of an EAJA application *"shall award to a prevailing party* ... fees and other expenses ... incurred by that party" in connection with that civil action. 28 U.S.C. § 2412(d)(1)(A) (emphasis added). In *Cullens,* the en banc Court set forth the four requirements for a successful EAJA application, as follows:

(1) [A] showing that the applicant is a prevailing party within the meaning of EAJA; (2) an assertion that the applicant is a party eligible for an award under EAJA because his or her net worth does not exceed two million dollars; (3) an assertion that the position of the Secretary at the administrative level or in litigation was not substantially justified; and (4) an itemized statement of the fees and expenses sought, supported by an affidavit from the applicant's counsel.

*Cullens,* 14 Vet.App. at 237. In the appellant's substantive pleadings filed in connection with the pending EAJA application, he has asserted that he is entitled to fees and expenses pursuant to the EAJA because he is a prevailing party based on the catalyst theory. Up to now, it has been the position of this Court that a party could be a "prevailing party" under the EAJA if it could be "shown that the litigant prevailed ... as the result of the suit's 'catalytic effects' ". *Weierbach v. West,* 12 Vet.App. 486, 488 (1999). In *Miley v. Principi,* the Federal Circuit approved of the application of the catalyst theory to EAJA cases in this Court but overruled part of *Weierbach* with respect to the evidence required to demonstrate a catalytic effect. *Miley,* 242 F.3d 1050, 1053, 1055 (Fed.Cir.2001). Although this Court has never expressly awarded EAJA fees based on the so-called "catalyst theory", one dissenting judge in *Maddalino* would have made an EAJA award, based on the catalyst theory, where "the Secretary ... conceded that an error occurred prior to the filing of the petition and ... essentially admitted that the error was detected and corrected because of the petition and the proceedings that followed", *Maddalino,* 13 Vet.App. at 482 (Kramer, J., dissenting); the majority rejected this analysis, *id.* at 478–79. In *Cullens,* the Court awarded EAJA fees without applying a "catalyst" analysis; rather, the Court stated that the claimant had established prevailing-party status based on a "clear winner" test. *Cullens,* 14 Vet.App. at 237 (citing *Cervantez v. Whitfield,* 776 F.2d 556, 562 (5th Cir.1985)).

Recently, the Supreme Court held in *Buckhannon* "that the 'catalyst theory' is not a permissible basis for the award of attorney's fees under the FHAA ... and ADA". *Buckhannon,* 121 S.Ct. at 1843. The FHAA provision at issue in *Buckhannon* provided: "In a civil action under [the

FHAA] ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs." 42 U.S.C. § 3613(c)(2). The ADA provision provided: "In any action or administrative proceeding commenced pursuant to [the ADA], the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs". 42 U.S.C. § 12205.

The Supreme Court was faced in *Buckhannon* with a request for attorney fees pursuant to the FHAA and ADA fee-shifting provisions in a case where, while the applicants' case was pending, the state legislature had acted, apparently independently, to enact legislation that had the effect of making the appeal moot. *Buckhannon*, 121 S.Ct. at 1838. The Supreme Court recognized that although most federal appellate courts had recognized the catalyst theory, at least two did not, and quoted the opinion of the United States Court of Appeals for the Fourth Circuit (Fourth Circuit) that had rejected the theory: " person may not be a 'prevailing party' ... *except* by virtue of having obtained an *enforceable judgment, consent decree*, or *settlement giving some of the legal relief sought'*". *Id.* at 1839 (emphasis added) (quoting *S–1 and S–2 v. State Bd. of Ed. of N. C.*, 21 F.3d 49, 51 (1994) (en banc)). The Supreme Court also noted the definition of prevailing party as being "termed *successful party*", *id.* at 1839 (quoting BLACK'S LAW DICTIONARY 1145 (7th ed.1999)), and determined that in order to be considered a prevailing party, one must have obtained some form of "judicially sanctioned change in the legal relationship of the parties." *Ibid.*

Because the appellant has attempted to "show[ ]", pursuant to the requirement in 28 U.S.C. § 2412(d)(1)(B), that he is a prevailing party based on the catalyst theory, the Court must now examine the catalyst theory in the EAJA context in order to determine whether to apply the Supreme Court's opinion in *Buckhannon* and hold that a party cannot attain prevailing-party status under the EAJA based on the catalyst theory. We begin with a comparison of the EAJA to the FHAA and ADA fee-shifting provisions, and conclude that they are more similar than dissimilar as to the meaning of "prevailing party". Although the EAJA mandates an award ("shall award to a prevailing party"), whereas both the FHAA and ADA use discretionary terminology ("may allow the prevailing party"), all three of the statutes utilize the identical term, "prevailing party"; we have found no good reason to assume that that term has a different meaning simply because under the EAJA a prevailing party "shall", as opposed to "may", be awarded reasonable attorney fees and costs. Indeed, the interpretive principle that the term "prevailing party" in the EAJA should be read and applied consistently with other fee-shifting statutes that use the term is the very principle that served as the basis for this Court's determination in *Lematta v. Brown* that the catalyst theory was a viable means to show prevailing-party status. *Lematta*, 8 Vet.App. 504 (1996). In *Lematta*, we noted that "federal courts routinely used the catalyst theory to determine whether a party was entitled to prevailing[-]party status under various attorney[-]fee statutes" and adopted the view of the United States Court of Appeals for the Sixth Circuit (Sixth Circuit) that simply because catalyst-theory precedents did "not involve fees under the EAJA, they are nonetheless instructive because '[t]he legislative history of section 2412 indicates that Congress intended that "prevailing party" as used in the [EAJA] be read consistently with other fee-shifting statutes.' *Heeren v. City of*

*Jamestown, Ky.,* 39 F.3d 628, 631 (6th Cir.1994) (citation omitted)." *Lematta,* 8 Vet.App. at 508.

The appellant and amicus curiae afford some weight to the fact that, under the EAJA, the prevailing party will not be awarded fees if, inter alia, the Secretary's behavior was substantially justified, 28 U.S.C. § 2412(d)(1)(A). July 31, 2001, Appellant's Response at 11–12; July 23, 2001, Amicus Curiae Response at 13–18. The appellant cites as persuasive the recent decision of a judge of the United States Court of Federal Claims (Court of Claims), which, too, relies upon the proposition that the substantial-justification requirement provides a basis for using a different definition of prevailing party in EAJA cases; the Court of Claims stated:

> Because the "substantially justified" analysis directs the court to consider the merits of the case underlying the EAJA application, a plaintiff cannot prove the legal merits of the case solely through the "prevailing party" requirement. Therefore, under [the] EAJA, the term "prevailing party" must mean something different from the term "prevailing party" used in the fee-shifting provisions examined and referenced in *Buckhannon.* The "substantially justified" requirement of [the] EAJA takes pressure off the "prevailing party" requirement because examination of the underlying case is mandated.

*Brickwood Contractors, Inc. v. United States,* 49 Fed.Cl. 738, 747 (2001).

We cannot agree that the fact that there is an additional hurdle (the substantial-justification requirement) facing a prevailing party under the EAJA affects whether an applicant qualifies as a prevailing party under the EAJA. Neither the appellant, amicus curiae, nor the Court of Claims has suggested a rationale under which the definition of "prevailing party" would be directly affected by the existence of the substantial-justification requirement. Instead, they all correctly point out that the substantial-justification requirement may make it more difficult for a prevailing party to obtain a fee award under the EAJA than under the FHAA or ADA, but they do not explain why that increased difficulty should, in and of itself, justify lowering the standard for determining whether an applicant *is* a prevailing party. In this regard, the appellant, amicus curiae, and the Court of Claims stress that the FHAA and ADA provisions also do not contain the mandatory ("shall award") language contained in the EAJA. We fail to see how this distinction cuts in favor of their position. Instead, the additional substantial-justification safeguard in the EAJA could very well reflect the need for additional protection against unworthy EAJA applications under a statute that, unlike the FHAA and ADA provisions, affords no discretion to the Court once the appellant makes the required showings to establish eligibility, *see Cullens,* 14 Vet.App. at 237. In any event, the definition of "prevailing party" in fee-shifting statutes does not appear to this Court to depend on the presence of a substantial-justification requirement, and the Court continues to agree with the Sixth Circuit that the use of the term "prevailing party" in the EAJA should be read consistently with the use of that term in other fee-shifting statutes. *See Heeren* and *Lematta,* both *supra.*

Not only is the use of the term "prevailing party" in the fee-shifting provisions at issue here not distinguishable in any apparently meaningful way, but the Supreme Court's opinion in *Buckhannon* strongly suggests that the term ought to be interpreted consistently across those statutes. The Supreme Court stated:

Congress ... has authorized the award of attorney's fees to the "prevailing party" in numerous statutes in addition to those at issue here, **such as** the Civil Rights Act of 1964, 78 Stat. 259, 42 U.S.C. § 2000e–5(k), the Voting Rights Act Amendments of 1975, 89 Stat. 402, 42 U.S.C. § 1973l(e), and the Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, 42 U.S.C. § 1988. *See generally Marek v. Chesny*, 473 U.S. 1, 43–51, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985) (Appendix to opinion of Brennan, J., dissenting).

*Buckhannon*, 121 S.Ct. at 1839 (emphasis added). The Supreme Court also noted that it has "interpreted these fee-shifting provisions consistently". *Id.* at 1839 n. 4. Although 28 U.S.C. § 2412(d) was not cited or otherwise referred to in the Supreme Court's opinion or included in the cited Appendix from *Marek, supra*, we do not read the Supreme Court as intending that list to be all-inclusive. *Id.* at 1839 (using "such as"). Moreover, we note that 28 U.S.C. § 2412(b) was cited in this Appendix and that the term "prevailing party" is used in that subsection as well as in subsection (a) of that section. Hence, that term must be read consistently throughout section 2412 unless to do so would yield an absurd result. *See Trilles v. West*, 13 Vet.App. 314, 324 (2000) (en banc) (when interpreting statute, Court must avoid "[a] conclusion that ... is not supported when construing every part or section of the statute and would yield an absurd result"); *Holliday v. Principi*, 14 Vet.App. 280, 285 (2001) (citing precedent regarding need to avoid absurd result when interpreting statute); *see also National Org. of Veterans' Advocates v. Secretary of Veterans Affairs*, 260 F.3d 1365, 1379 (Fed.Cir.2001) ("it is a well-established rule of statutory construction that normally 'identical words used in different parts of the same act are intended to have the same meaning'" (quoting *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 570, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995) (quoting *Dep't of Revenue of Ore. v. ACF Indus., Inc.*, 510 U.S. 332, 342, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994)))).

We find no such absurd result in reading "prevailing party" to have the same meaning throughout section 2412, and note that the language of subsection (b) ("a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action") is quite similar to the discretionary—award language in the FHAA ("[i]n a civil action under [the FHAA] ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs", 42 U.S.C. § 3613(c)(2)) and the ADA ("[i]n any action or administrative proceeding commenced pursuant to [the ADA], the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs", 42 U.S.C. § 12205). We also do not read the Supreme Court's use of the word "authorized" as excluding the EAJA merely because it is mandatory; the EAJA is nonetheless an authority for the award of attorney fees. (In contrast, it could **not** be said that a description of "mandated" could include statutes that merely make the fee awards available, subject to a court's discretion.)

Moreover, although the Supreme Court did not cite to any cases brought under the EAJA, *Buckhannon* does reference many opinions that this Court has relied upon in

developing our own body of EAJA caselaw and, specifically, in guiding our caselaw on the catalyst theory. *See Buckhannon,* 121 S.Ct. at 1840 (citing *Texas State Teachers Assn. v. Garland Independent School Dist.,* 489 U.S. 782, 792, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), quoted by this Court in *Swiney v. Gober,* 14 Vet.App. 65, 69 (2000) (for proposition that prevailing party status may be shown if Court action "materially changed the legal relationship between the Secretary and the appellant" (internal quotation marks omitted)), and *Stillwell v. Brown,* 6 Vet.App. 291, 297 (1994) (characterizing *Texas State Teachers* as having "held that [prevailing-party] status was obtained if the plaintiff has succeeded on any significant issue in litigation" (internal quotation marks omitted))); *Buckhannon,* 121 S.Ct. at 1840–41 (citing *Hewitt v. Helms,* 482 U.S. 755, 760, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987), cited by this Court in *Lematta,* 8 Vet.App. at 509 (also citing *Farrar, infra* )); *Buckhannon,* 121 S.Ct. at 1840–42 (citing *Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980), cited by this Court in *Cullens,* 14 Vet.App. at 237 (for proposition that prevailing party status may be established by procuring favorable settlement)); *Buckhannon,* 121 S.Ct. at 1841, 1843 (citing *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), cited by this Court in, inter alia, *Swiney,* 14 Vet.App. at 69, and *Weierbach,* 12 Vet.App. at 488 (specifically stating that "the catalyst theory does survive *Farrar* ")); *Buckhannon,* 121 S.Ct. at 1843 (citing *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), cited in, inter alia, *Cullens,* 14 Vet.App. at 240, and *Dillon v. Brown,* 8 Vet.App. 165, 168 (1995)). The Supreme Court's extensive use of the above caselaw in arriving at the meaning of the term "prevailing party" articulated in *Buckhannon,* coupled with the Supreme Court's statement that it has interpreted fee-shifting statutes "consistently", suggest strongly that the opinion has special relevance to this Court in informing the definition of "prevailing party" in the EAJA context.

A major part of the Supreme Court's rationale for dispensing with the use of the catalyst theory to show prevailing-party status—the problems inherent in the "analysis of the defendant's subjective motivations in changing its conduct" that is required by the catalyst theory-also supports the application of *Buckhannon* to the EAJA in the instant case. That Court's concern applies with equal force to the EAJA. Moreover, the Supreme Court's suggestion that the catalyst theory was created by "several Courts of Appeals [that] have relied upon dicta in our prior cases in approving the 'catalyst theory' " cannot be ignored. *Buckhannon,* 121 S.Ct. at 1841.

Thus, the Court concludes, on the basis of the foregoing analysis, that the language of all of 28 U.S.C. § 2412 as compared to the FHAA and ADA, coupled with the structure and content of the Supreme Court's opinion in *Buckhannon,* demonstrates that the definition of "prevailing party" set forth by the Supreme Court in *Buckhannon* applies to the appellant's EAJA application in this case. Accordingly, because the catalyst theory is no longer available to achieve prevailing-party status in this Court, we do not address the appellant's contention that he prevailed under the terms of the catalyst theory by virtue of the effect of 38 C.F.R. § 3.156(b).

### III. Conclusion

On consideration of the foregoing, the Secretary's motion to dismiss is denied and the appellant's application for an award of attorney fees and expenses is denied.

APPLICATION DENIED.

STEINBERG, Judge, separate statement:

As the author judge, I write separately at this point to express my individual view that our decision today does not conflict with the full Court's opinion in *Cullens, supra.*[1] There, in the underlying merits appeal, the Court dismissed the appealed claim after the parties had submitted to the Court a motion to dismiss that contained within it a settlement agreement with terms that "clearly" showed "that the appellant [had] obtained complete success in his desired objective on appeal; i.e., he was awarded *all* of the benefits previously denied." *Cullens,* 14 Vet.App. at 237 (citing, and apparently applying, the "clear winner" test articulated by the U.S. Court of Appeals for the Fifth Circuit in *Cervantez, supra,* a circuit that is recognized in *Buckhannon* as not subscribing to the catalyst theory, 121 S.Ct. at 1839 n. 3). The Court's action to dismiss the claim on the merits in *Cullens* was consistent with the Court's general practice, begun in *Bond v. Derwinski,* that when the parties move jointly "for an order approving disposition of [an] appeal in accordance with their stipulated agreement", the Court will grant the motion and dismiss the case as moot. *Bond,* 2 Vet.App. 376, 377 (1992) (per curiam order). In such a case, the Court's dismissal may provide the necessary judicial "sanction[ ]"—or "imprimatur"—discussed in *Buckhannon,* to support an applicant's claim that the Secretary's change in conduct was "not voluntary" but resulted directly from the appeal of the denied claim. *Buckhannon,* 121 S.Ct. at 1839–40. In that regard, neither of the Supreme Court's precipitating concerns for generally rejecting the catalyst theory—avoidance of "a second major litigation" and the difficulty of divining the motivations of the party whose conduct changed, *id.* at 1841—seem to have much, if any, applicability in such a settlement situation.

---

1. Although the Court's opinion does not address the point, I note that the application for attorney fees and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (EAJA), meets whatever jurisdictional content requirements there may be, because it contained the following: (1) A showing that, by virtue of the Court's remand, he is a prevailing party within the meaning of the EAJA; (2) a showing that he is a party eligible for an award under the EAJA because his net worth does not exceed $2,000,000; (3) an allegation that the position of the Secretary was not substantially justified; and (4) an itemized fee statement. *See* 28 U.S.C. § 2412(d)(1)(A), (1)(B), (2)(B); *Fritz v. West,* 13 Vet.App. 190, 195 (1999); *Chesser v. West,* 11 Vet.App. 497, 499 (1998); *Bazalo v. Brown,* 9 Vet.App. 304, 308 (1996), *rev'd sub nom. Bazalo v. West,* 150 F.3d 1380, 1384 (Fed.Cir.1998). The Court denies the application because the appellant failed to demonstrate that he is a prevailing party. However, he asserted in his EAJA application that he was a prevailing party. Application at 4. In my view, he was required to do no more than that in order to satisfy any prevailing-party content requirement in order for the Court to have jurisdiction over his EAJA application. *See Cullens,* 14 Vet.App. 234, 237 (2001) (en banc) ("[t]he appellant has met the jurisdictional prerequisites of EAJA in that he filed an application within the 30 day time limit" (citing *Bazalo v. West,* 150 F.3d at 1384)); *see also Bazalo v. West,* 150 F.3d at 1383 (although EAJA "time limitation should be strictly met, the content of the EAJA application should be accorded some flexibility"; appellant's "statement that [appellant] is a prevailing 'party' satisfies the eligibility requirement for jurisdictional purposes"); *id.* at 1385 (Schall, J., dissenting) (recognizing that the majority had "allow[ed] a party to satisfy *both* the *prevailing party* and the eligibility requirements of 28 U.S.C. § 2412(d)(1)(B) *simply by stating that it is a 'prevailing party,'* " (emphasis added)). *Accord Knight v. Brown,* 8 Vet.App. 212, 213 (1995) (per curiam order) ("[a]n assertion of prevailing party status in a timely filed EAJA application is one prerequisite to the exercise of this Court's jurisdiction over the application").

Thus, the Court's dismissal of the appeal in *Cullens* appears to be similar in effect to the adoption by a court of a settlement decree, which the Supreme Court confirmed in *Buckhannon* can be a basis for prevailing-party status. *Buckhannon*, 121 S.Ct. at 1840 (citing *Gagne, supra,* for proposition that "settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees"); *see also id.* at 1839 (quoting, with apparent approval, Fourth Circuit holding that prevailing party is, inter alia, one who has "obtained ... ***settlement giving some of the legal relief sought***'" (quoting *S 1 and S 2, supra* (emphasis added))). In other words, it appears that, had the appellant not appealed the claim at issue in *Cullens,* the denial of the claim would have become final and the appellant would have been unable to establish a right to the benefit sought based on that claim; whereas, in the instant case, the Board's denial of service connection based on the claim on appeal remains unchanged; the benefit of service connection has been awarded on the basis of a different claim, one to reopen based on new and material evidence, *see* 38 U.S.C. § 5108; 38 C.F.R. § 3.156(a) (2000). Hence, the situation before us and our holding today is distinguishable from *Cullens.*

I further note that the Secretary, at oral argument, recommended that this Court should change the practice that it began in *Bond.* It is obvious that many other courts do not follow the *Bond* dismissal approach when presented with settlement agreements but, rather, enter forms of judicial decrees sanctioning the settlement. *See Maher,* 448 U.S. at 129–30, 100 S.Ct. 2570 (finding prevailing-party status where fee applicant had gained relief through consent decree entered by district court). Adopting a similar approach may be a wise option for this Court to pursue (although it is unclear whether this Court is possessed

of the supervisory jurisdiction of a U.S. District Court over a settlement agreement incorporated in such a court's decree).