# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 96-978

BURKE HENSLEY, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appellant's Application for Attorney Fees and Expenses

(Decided     November 27, 2002   )

*Edward B. Myers*, of North Potomac, Maryland, and *Barton F. Stichman*, of Washington, D.C., were on the pleadings for the appellant.

*Leigh A. Bradley*, General Counsel; *Ron Garvin*, Assistant General Counsel; *Michael A. Leonard*, Deputy Assistant General Counsel; and *Ann G. Gawalt*, all of Washington, D.C., were on the pleadings for the appellee.

Before KRAMER, *Chief Judge*, and HOLDAWAY and STEINBERG, *Judges*.

HOLDAWAY, *Judge*, filed the opinion of the Court. STEINBERG, *Judge*, filed an opinion concurring in part and dissenting in part.

HOLDAWAY, *Judge*: Before the Court is the appellant's application, pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), for attorney fees and expenses, in the amount of $58,691.54. The Secretary has filed a response opposing the grant of EAJA fees, and the appellant has filed a reply. Each party subsequently submitted a supplemental memorandum of law in response to the Court's order of May 10, 2002. For the following reasons, the Court will grant in part the appellant's EAJA application, in the amount of $47,098.97.

# I. BACKGROUND

The appellant, Burke Hensley, previously appealed a February 1996 decision of the Board of Veterans' Appeals (BVA or Board) that had denied, as not well grounded, his claim for service connection for heart disease as a residual of mustard gas exposure because his condition was not among the disabilities listed in 38 C.F.R. § 3.316 as presumptively service connected based on mustard gas exposure.

The appellant appealed the Board's decision to this Court, asking the Court to reverse the Board's determination because, he alleged, his claim for service connection was well grounded. The Secretary filed a brief with the Court seeking affirmance; he argued that the appellant failed to submit competent medical evidence of a nexus between mustard gas exposure and the appellant's heart disease. On September 22, 1998, the Court, by single judge, affirmed the Board decision; the Court noted that, although the Board had erred in finding the appellant's claim not well grounded simply because his condition was not among those listed in 38 C.F.R. § 3.316, that error was harmless because, upon performing a de novo review of the well groundedness issue, the Court found that the appellant's claim for direct service connection was not well grounded.

The appellant appealed the Court's decision to the U.S. Court of Appeals for the Federal Circuit (Federal Circuit). On May 12, 2000, the Federal Circuit issued an opinion holding that, although this Court correctly held that the Board erred in finding that the appellant's heart condition was not well grounded solely because his condition was not listed with those eligible for presumptive service connection under 38 C.F.R. § 3.316, the Board had not reached the factual issue of whether sufficient evidence had been presented to establish a well-grounded claim for direct service connection, and that this Court impermissibly engaged in fact finding in holding, upon de novo review, that the appellant's claim for direct service connection was not well grounded. The Federal Circuit vacated this Court's decision and remanded the matter for proceedings consistent with its opinion. *Hensley v. West*, 212 F.3d 1255 (Fed. Cir. 2000). On July 24, 2000, this Court vacated the February 1996 Board decision and remanded the appellant's claim to the Board for proceedings consistent with the Federal Circuit's opinion. Judgment was entered on August 15, 2000, and mandate was issued on October 17, 2000.

2

On September 8, 2000, the appellant submitted a premature EAJA application, which the Court filed on October 17, 2000, when mandate had issued, signifying that the August 15, 2000, judgment had become final. *See Pardue v. Principi*, 15 Vet.App. 120, 122 (2001) (per curiam order) (holding that judgment becomes final, by operation of law, 60 days after entry of judgment; issuance of mandate is "ministerial function" (quoting *Strouth v. Brown*, 8 Vet.App. 502, 504 (1996) (per curiam order))).

## II. ANALYSIS

### A. Jurisdictional and Content Requirements

"The Court has jurisdiction to award reasonable attorney fees and expenses pursuant to 28 U.S.C. § 2412(d)(2)(F)." *Cullens v. Gober*, 14 Vet.App. 234, 237 (2001) (en banc). In order for the Court to have jurisdiction over an EAJA application, the application must be filed within the 30-day period established in 28 U.S.C. § 2412(d)(1)(B). In order for an appellant to be eligible for an EAJA award, the EAJA application must contain (1) a showing that the applicant is a prevailing party within the meaning of the EAJA; (2) an assertion that the applicant's net worth does not exceed $2 million; (3) an allegation that the position of the Secretary at the administrative level or in litigation was not substantially justified; and (4) an itemized statement of the fees and expenses sought, supported by an affidavit from the applicant's counsel. *See* 28 U.S.C. § 2412(d); *Thayer v. Principi*, 15 Vet.App. 204, 207 (2001); *Cullens*, 14 Vet.App. at 237; *Chesser v. West*, 11 Vet.App. 497, 499 (1998); *Bazalo v. Brown*, 9 Vet.App. 304, 308 (1996) (en banc), *rev'd on other grounds sub nom. Bazalo v. West,* 150 F.3d 1380, 1384 (Fed. Cir. 1998). In order for an applicant to be entitled to fees, (1) the Court must find that the party opposing the United States is a prevailing party; (2) there must be an allegation by the appellant that the government's position was not substantially justified and there must be no Court finding to the contrary; and (3) there must be no Court finding that there are circumstances that would make an award against the government unjust. *See Cullens*, 14 Vet.App. at 240; *Elcyzyn v. Brown*, 7 Vet.App. 170, 174 (1994).

As the Secretary concedes, the appellant's EAJA application was timely filed, and there are no circumstances that would make an award in some reasonable amount unjust. Further, the Court notes that the appellant does assert that his net worth did not exceed $2 million at the time the action

was filed, he alleges that the Secretary's position at both the administrative and litigation levels was not substantially justified, and he has filed an itemized statement of fees and expenses supported by his counsel's affidavit.

The appellant also asserts that he is a prevailing party. The Court has recently held that in order to be considered a prevailing party for purposes of obtaining an EAJA award, the appellant who obtains a remand that does not direct the award of benefits must show that the remand was "predicated upon administrative error." *Sumner v. Principi*, 15 Vet.App. 256, 264-65 (2001) (en banc). Given that the remand here was based on the Board's misinterpretation of 38 C.F.R. § 3.316 and the Board's failure to consider whether the appellant had presented evidence of a well-grounded claim for direct service connection, and, in light of the Secretary's concession that the appellant is a prevailing party, the Court finds that the appellant is a prevailing party. *See Briddell v. Principi*, 16 Vet.App. 267, 271-74 (2002). The only issues remaining in contention are (1) whether the Secretary was substantially justified in his administrative and litigation positions and, if the Court finds that the Secretary was not substantially justified in either position, (2) whether the EAJA fees requested by the appellant are reasonable.

## B. Substantial Justification

Once an appellant has alleged a lack of substantial justification, the burden shifts to the Secretary to prove that VA was substantially justified both in its administrative and litigation positions. *See Cullens*, 14 Vet.App. at 237; *Locher v. Brown*, 9 Vet.App. 535, 537 (1996); *Bazalo*, 9 Vet.App. at 309; *Stillwell v. Brown*, 6 Vet.App. 291, 301 (1994). This Court has held, in determining whether the position of the Secretary was substantially justified:

> VA must demonstrate the reasonableness, in law and fact, of the position of . . . VA in a matter before the Court, and of the action or failure to act by . . . VA in a matter before . . . VA, based upon the totality of the circumstances, including merits, conduct, reasons given, and consistency with judicial precedent and VA policy with respect to such position, and action or failure to act, as reflected in the record on appeal and the filings of the parties before the Court.

*Id.* at 302. Further, "reasonableness is determined by the totality of circumstances, and not by any single-factor approach." *Id*. In *Stillwell*, the Court went on to explain that "'a position can be justified even though it is not correct, and we believe it can be substantially (i.e., for the most part)

justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.'" *Id.* (quoting *Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988)). The Court measures substantial justification based not on the law existing at the time that the EAJA application was filed, but rather on the law at the time VA adopted its position. *See Bowey v. West*, 218 F.3d 1373, 1377 (Fed. Cir. 2000). The Secretary argues that his position was substantially justified at both the administrative and litigation phases of the appellant's underlying case.

In his response to the appellant's EAJA application, the Secretary concedes that his position at the administrative level "was not entirely correct" because the Board "did not fully consider whether [the a]ppellant would be entitled to direct service connection for residuals of mustard gas." Response (Resp.) at 6. However, the Secretary points out, this Court ruled that the Board's position did not prejudice the appellant because, the Court concluded, the claim for direct service connection was not well grounded. The Secretary asserts that the Court equates a nonprejudicial position of the Board with reasonableness, citing *Vaughn v. Gober*, 14 Vet.App. 92, 95 (2000) (per curiam order). Therefore, he argues that because the Board's error became prejudicial only when the Federal Circuit issued its opinion which, he claims, "overturned the [Court's] well-settled interpretation and application of the de novo standard," the Secretary was substantially justified in his administrative position.

The only authority cited by the Secretary in support of his argument that a nonprejudicial position is equivalent to a reasonable one is *Vaughn*, *supra*. *Vaughn* presents a situation quite distinct from the present one. In *Vaughn*, the Court found that the Board's treatment of a veteran's claim as an original claim, rather than a reopened one, was nonprejudicial, and therefore reasonable, because that treatment actually *benefitted* the appellant, in that it eliminated the need for him to demonstrate that he had presented new and material evidence. *Vaughn*, 14 Vet.App. at 95. In the present case, the Board's rejection of the appellant's claim as not well grounded because his condition was not eligible for presumptive service connection, and its error in not analyzing whether the appellant had presented evidence of direct service connection can in no way be considered beneficial to the appellant. The Board's action was contrary to then-existing precedent, *see Combee v. Brown*, 34 F.3d 1039 (Fed. Cir. 1994), was contrary to what the relevant regulations require (*see* 38 C.F.R. § 3.303(d) (1996)), and deprived the appellant of the opportunity to prove direct service connection.

5

The Secretary's argument relies solely on a subsequent determination by this Court that the Board's error was nonprejudicial. However, when the Board rendered its decision, in no way could it have foreseen that the Court would later find error in its determination but nonetheless deem it harmless because for another reason altogether the appellant did not merit the relief he sought. This Court's 1998 decision did not excuse the Board's error, nor did it find the Board reasonable in its position; rather, it found that the Board's error was harmless. A nonprejudicial, or harmless, position is quite distinct from a reasonable one. It is difficult to imagine a circumstance in which the Board, acting contrary to clear and unambiguous case precedent and a clear and unambiguous regulation, could be considered to have adopted a reasonable position. Perhaps if the case precedent or regulation were not clear and unambiguous that might be a different matter. But that was not the situation under the facts of this case. The Court holds that, in the present case, the Secretary was not substantially justified in his administrative position. Because that is sufficient to make the appellant eligible for an EAJA award, the Court need not reach the question of whether the Secretary was substantially justified in his litigation position. *See Jackson v. West*, 12 Vet.App. 422, 429 (1999).

### C. Fees for an Appeal to the Federal Circuit

Having determined that the appellant is eligible for an EAJA award, the Court now considers the issue that prompted it to issue a show-cause order on May 10, 2002. On that date, the Court ordered the appellant (1) to show cause why the portion of his EAJA application seeking an award of fees and expenses for work his counsel did in association with the appellant's appeal to the Federal Circuit should not be dismissed for lack of jurisdiction, and (2) ordered the appellant to show cause why the Federal Circuit, the highest court that reviewed the appellant's case on the merits, was not the proper court in which to file his EAJA application.

As the appellant states in his supplemental memorandum of law filed July 10, 2002, the Federal Circuit has held, in *PPG Industries v. Celanese Polymer Specialties Co.*, 840 F.2d 1565, 1569 (Fed. Cir. 1988), that it does not have exclusive jurisdiction over a grant of attorney fees for work done before it. In that case, a district court declined to award fees for work done by the prevailing party's counsel in connection with the prevailing party's appearance as an intervenor in a separate appeal to the Federal Circuit that had binding effect on the outcome of the underlying action between the parties. The district court cited, as the basis for denying the fees, Federal Circuit

6

Local Rule 20(a)(1), which permitted filing an application for attorney fees directly with the Federal Circuit. The Federal Circuit reversed, holding that where an appeal is "an integral part of the ongoing litigation . . . the power to award attorney fees for appellate work is not the exclusive domain of an appellate court." *Id.* In its opinion, the Federal Circuit cited numerous cases decided in other federal courts of appeal in which the appellate court either approved a district court's award of fees for appellate work or remanded a case to a district court to permit the district court to determine the amount of reasonable attorney fees for appellate work. *Id.*

Further, the Supreme Court has established, in *Commissioner, INS v. Jean*, 496 U.S. 154, 159 (1990), that only one threshold determination of substantial justification is to be made for the entire litigation. Given that the Federal Circuit does not have exclusive jurisdiction to make this necessary threshold determination, this Court holds that it does have jurisdiction to award fees under the EAJA for work associated with an appeal to the Federal Circuit.

## D. Reasonableness of the Fee

The Secretary asks the Court to reduce the fees requested by the appellant to $35,675.36, asserting that the claimed fees are not reasonable. Resp. at 10-15. The Court has wide discretion in the award of attorney fees under the EAJA. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Chiu v. United States*, 948 F.2d 711, 713 (Fed. Cir. 1991). In *Eckerhart*, the United States Supreme Court instructed that, in reviewing fee applications, a court should exclude hours that are not reasonably expended. *Eckerhart*, 461 U.S. at 434. The Supreme Court stated: "Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . . " *Id.* In determining the number of hours that were reasonably spent, the Court may consider a number of factors, including whether the work performed was duplicative, whether an attorney takes extra time due to inexperience, or whether an attorney performs tasks normally performed by paralegals, clerical personnel, or other non-attorneys. *Ussery v. Brown*, 10 Vet.App. 51, 53 (1997); *see Sandoval v. Brown*, 9 Vet.App. 177, 180 (1996). The Court "may properly reduce the number of hours claimed for time spent in duplicative, unorganized, or otherwise unproductive efforts." *Vidal v. Brown*, 8 Vet.App. 488, 493 (1996) (citing *Jordan v. U.S. Dep't of Justice*, 691 F.2d 514, 518 (D.C. Cir. 1982)). However, if unsupported, the

7

Secretary's allegations of excessive time expended are insufficient to justify a reduction in hours. *Sandoval*, 9 Vet.App. at 181.

The Secretary asserts that the fees requested are unreasonable in a number of specific instances, namely, the time spent in 1997 preparing motions and preparing the principal brief for this Court, the time spent in 1998 preparing the reply brief and preparing the motion for reconsideration for this Court, and the time spent in 1999 preparing the principal brief and the reply brief for the Federal Circuit. Resp. at 10-15.

## 1. 1997

First, the Secretary contests the appellant's claim of 3.5 hours for attorney time that the appellant attributes to the drafting, on April 24, 1997, of two very brief papers to be filed with this Court; the Secretary argues that, because one of these papers (an answer) was neither complex nor novel, consisting only of a short procedural history of the case, the claimed hours should be reduced to 1 hour. The appellant responds that the time claimed is reasonable considering the substantial length of the record. The Court agrees with the Secretary that the claim of 3.5 hours is excessive. Notwithstanding the length of the *factual* history of the case, the brief answer summarized the *procedural* history of the case before this Court alone, which was quite short at the time. Moreover, in describing how the 3.5 hours were spent, the appellant's counsel makes no mention of having reviewed the underlying record, nor would reviewing the underlying record have been necessary for the purposes of preparing that answer. The Court will reduce the claim of 3.5 hours to 1 hour.

Next, the Secretary objects to the appellant's claim of a total of 2.75 hours over two days, October 20 and 21, 1997, spent by counsel preparing a motion for an extension of time. The Court notes that under Rule 26 of its Rules of Practice and Procedure (Rules), it may, sua sponte or in response to a motion by a party for good cause shown, extend the time prescribed by the Rules for doing any act. The Court elected to grant such extensions in the case at hand on numerous occasions in response to motions of the appellant, and the appellant, in his application for an EAJA award, has claimed time for the preparation of these motions. Although the Court's Rules permit such motions, permitting an appellant to ask for an extension of a deadline and finding that the public fisc should subsidize such efforts are two entirely different matters. The preparation of such motions would be unnecessary if the appellant would timely perform the act required of him or her. However, the

8

Court recognizes that on occasion, circumstances beyond the appellant's control make timely performance difficult, if not impossible. In this case, the Court, in its determination of what constitutes a reasonable fee for purposes of an application under the EAJA, will exercise its discretion to reduce or eliminate as unreasonable certain fees for work associated with preparing motions for extensions of time. *See generally Eckerhart*, 461 U.S. at 437 (holding that Court has wide discretion in award of attorney fees under EAJA). In this instance, the appellant's counsel sought an extension of time because of "the press of court proceedings in the United States District Court for the District of Columbia"; the necessity of drafting a motion for an extension of time would have been eliminated had the appellant's counsel more efficiently managed his workload and timely filed the opening brief before this Court. The Court finds it unreasonable that the appellant's counsel expects the public funds to subsidize his delinquency and will strike the claimed 2.75 hours.

Similarly, the Secretary objects to the appellant's claim that, on November 17 and 19, 1997, his counsel spent 2.75 hours to prepare a motion for an extension of time. Again, appellant's counsel sought an extension "due to the press of court proceedings in other court proceedings." For the reasons listed above, the Court will strike the claimed 2.75 hours.

The Secretary also objects to the appellant's claiming any time whatsoever for his attorney's preparation of the initial brief filed before this Court in December 1997; the Secretary asserts that the appellant's arguments were rejected by the Court and therefore were unnecessary to the resolution of the case. He cites *Perry v. West*, 11 Vet.App. 319, 334 (1998), in support of the proposition that an EAJA award is justified only for actions that are a "necessary and important factor in achieving the relief desired," impliedly drawing the conclusion that time spent on arguments that are ultimately unsuccessful is unnecessary and therefore should not be recompensed under the EAJA. The appellant responds that the preparation of the initial brief was necessary to the resolution of the case, that one argument ultimately was successful, and that, in any event, hours relating to his other, unsuccessful, argument have been excised from the application in the exercise of billing discretion.

The Court agrees with the appellant that in his opening brief he did advance one correct argument, the one relating to the Board's erroneous interpretation of 38 C.F.R. § 3.316. Further, and more importantly, this Court and other courts have held that an appellant *may* recover fees under the EAJA for unsuccessful, but reasonable, arguments, if the litigant ultimately was successful on the

9

claim. *See Chesser*, 11 Vet.App. at 503-04; *Schneider v. Colegio de Abogados de P.R.*, 187 F.3d 30, 48-49 (1st Cir. 1999) (per curiam opinion) (Lipez, C.J., concurring); *Jaffee v. Redmond*, 142 F.3d 409, 414 (7th Cir. 1998); *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1314 (7th Cir. 1996). It is a close call, but the Court finds that the appellant's arguments in his opening brief, although in some degree irrelevant and for the most part not ultimately successful, were made in good faith and constituted effort reasonably expended in advancing his case. Given the length of the record and the arguments presented, the Court does not find the appellant's claim of 41.75 hours of attorney time spent preparing the opening brief to be excessive or unreasonable.

Therefore, the Court will reduce the total amount of time claimed in 1997 for work done by Edward Myers, Esq., from 78 hours to 70 hours.

### 2. 1998

The Secretary contests the appellant's claim of 4.75 hours of attorney time on April 20, 1998, spent in drafting and filing an opposition to the Secretary's motion for an extension of time; the Secretary argues that the opposition consisted of one and one half pages of a simple argument. He seeks a reduction to .75 hours. The appellant responds that drafting the motion required "a substantial amount of original research" because the appellant's counsel had not previously drafted such a motion. The Court notes that, in his opposition, the appellant did not cite any statute or case that would provide a legal basis for denying the Secretary's motion for an extension of time. The Court agrees with the Secretary that a claim of 4.75 hours for a simple motion unsupported by legal authority is excessive and will reduce the 4.75 hours to .75 hours.

The Secretary also contests the appellant's claim of 2 hours of attorney time on May 27, 1998, spent preparing a motion for an extension of time. Again, the appellant's counsel sought an extension "because of the press of business before this Court and before other agencies of the federal government." For the same reasons listed previously in striking the time claimed for the appellant's counsel to prepare motions for an extension of time based on workload management, the Court will strike the claimed 2 hours.

The Secretary objects to the appellant's claim of 32.25 hours for work done preparing his reply brief for this Court. Again, the Secretary asserts that one argument was not successful and that the total time therefore should be reduced to 15.25 hours. The appellant responds that the time

associated with the unsuccessful claim has been omitted. The Court's review of the appellant's reply brief reveals that not just one but all arguments contained therein were rejected by the Court. In his reply brief, the appellant principally analyzed evidence that he claimed proved a nexus between his condition and mustard gas exposure (and did not argue that the Court could not review this evidence in the first instance), and proffered various other arguments later found to be without merit. In his reply brief, the appellant did not address the Board error in interpreting 38 C.F.R. § 3.316, because this was basically conceded by the Secretary. Again, this is a close call. However, for the same reasons listed previously relating to the appellant's opening brief, the appellant should be recompensed for these unsuccessful arguments because they were expended reasonably. However, the Court will strike the 1.75 hours claimed on June 30, 1998, for the appellant's counsel to draft a motion to file the reply brief out of time, as unreasonable, given that such a motion was necessitated solely by the appellant's counsel's delinquency.

The Secretary also contests the 31 hours of attorney time claimed by the appellant for preparing his motion for reconsideration or for a panel decision in this Court, and asks that this amount be eliminated from the EAJA award, pointing out that the motion was denied by the Court as moot. The appellant argues that the denial of the motion was but a "temporary setback" and that the arguments in the motion were later accepted by the Federal Circuit.

The Court notes that its memorandum decision affirming the Board's decision was issued on September 22, 1998. Under the Court's Rules, the appellant's time to file a motion for reconsideration or for a panel decision expired on October 15, 1998, and judgment was entered on that date. On October 20, 1998, the appellant requested an extension of time to file such a motion. On October 30, 1998, the Court noted that the time for filing the motion for reconsideration or for a panel decision had expired, and the appellant's motion for an extension of time was denied as moot. Having failed to meet the deadline set by long standing Court Rules, the appellant's only recourse was to file an appeal with the Federal Circuit. Nevertheless, on November 18, 1998, the appellant inexplicably filed with the Court a motion for leave to file out of time a reconsideration motion and for vacatur of the Court's judgment. On that same date, the Court received the appellant's 17-page motion for reconsideration or for a panel decision. The Court denied the motion for leave to file out of time and for vacatur on November 25, 1998, because the Court had previously denied the

11

appellant's motion for an extension of time. The appellant's filing of the motion for leave to file out of time and for vacatur and submission of the reconsideration motion was unreasonable and unnecessary, given that he had already missed the filing deadline. Moreover, although it is not a decisive factor, the Court also is constrained to note that in this untimely motion, the appellant did not raise the issue upon which he ultimately prevailed, i.e., the *authority* of this Court to find facts in the first instance. Accordingly, the Court will strike the 31 hours associated with the preparation of the reconsideration motion.

As outlined above, the Court will reduce the amount of time claimed in 1998 for work done by Edward Myers, Esq., from 84.35 hours to 45.6 hours.

### 3. 1999

Finally, the Secretary contests awarding EAJA fees for time spent by the appellant's counsel preparing briefs that contained various unsuccessful arguments before the Federal Circuit. First, the Secretary objects to awarding EAJA fees for the appellant's counsel's time spent preparing part I of the opening brief and part II of the reply brief, because those parts contained the appellant's argument that *Epps v. Gober*, 126 F.3d 1464 (Fed. Cir. 1997), should be overturned. The Secretary correctly notes that a panel of judges at the Federal Circuit cannot overturn a prior panel decision of that court; only the court deciding a case en banc may do so. *See South Corp. v. United States*, 690 F.2d 1368 (Fed. Cir. 1982). He asks the Court to exclude the hours spent preparing that portion of the briefs. The appellant contends that he is entitled to be compensated for attorney time spent preparing all arguments before the Federal Circuit.

As noted above, an appellant may recover fees under the EAJA for unsuccessful but reasonable arguments if the litigant was ultimately successful on the claim. Courts may award fees for time reasonably spent on an unsuccessful argument in support of a successful claim; however, the touchstone in determining whether fees ought to be awarded in such a case is whether the argument was reasonable. *People Who Care*, 90 F.3d at 1314. The appellant contends that the argument to overturn *Epps* was reasonably made to the panel because a rule of that court permits an appellant to ask a panel to overrule precedent without petitioning for a hearing *en banc*. *See* FED. CIR. R. 35(a)(2). However, in its opinion in this case, the Federal Circuit stated:

12

> Mr. Hensley devotes much of his brief to urging us to overturn this court's *Epps* decision . . . . However, as Mr. Hensley is fully aware, this panel lacks the authority to overturn a prior decision of another panel. *See South Corp.* [, *supra*]. Any reversal of *Epps* by this court will have to be done by the court *en banc*.

*Hensley v. West*, 212 F.3d 1255, 1260-61 (Fed. Cir. 2000). The Federal Circuit made no further mention of the appellant's argument that *Epps* should be overturned. Thus, although the Federal Circuit's rules technically may allow a litigant to ask a panel to overrule prior precedent, there is no question that a panel lacks authority to rule on that request. *See South Corp.*, *supra*. Nevertheless, the appellant devoted fully 27 of the 48 pages of the argument section in his opening brief (a little more than half) and 15 of the 33 pages of the argument section of his reply brief (a little less than half) to the *Epps* argument.

Given the Federal Circuit's treatment of the *Epps* issue, this Court finds that, in this case, it was unreasonable for the appellant's counsel to have expended such considerable efforts on the *Epps* argument before a panel of the Federal Circuit. The question is not whether it was within the rules to advance a futile argument; it is whether it was reasonable for the appellant's counsel to have devoted the majority of the argument portion of his brief to a panel that lacked authority to rule in his favor on that issue. *See generally Eckerhart*, 461 U.S. at 434. The Federal Circuit itself pointed out that the appellant was "fully aware" that the panel lacked authority to rule on such a matter (although in his opening brief to the Federal Circuit, the appellant asks "this panel" to overrule *Epps*). *Hensley*, 212 F.3d at 1260-61. In the present case, the appellant's counsel could have provided a *succinct* synopsis of the *Epps* argument in his brief to the panel, thereby preserving the issue for a later en banc argument, and then, if granted en banc review, could have appropriately submitted to the en banc court a fully developed analysis of his argument to overrule *Epps*.

Now comes the difficult issue of determining how much time was devoted to the *Epps* argument, including time spent preparing the opening brief, the reply brief, and preparing for oral argument. It appears from the itemization of fees that only one attorney, Barton F. Stichman, Esq., drafted the *Epps* argument, which comprised part I of the opening brief and part II of the reply brief. Unfortunately, in his billing records, Mr. Stichman often lists various activities under a single time block, and it is impossible to ascertain exactly how much time was devoted to each discrete task listed. The total time that included tasks related to the *Epps* argument for the opening brief, as listed

13

for February 5, March 19, 26, 29, 30, and 31, April 1, and 6, 1999, is 32.5 hours. The Court will reduce that amount by approximately half, to 16 hours, which is probably generous. The total time that included tasks related to the *Epps* argument for the reply brief, as listed for June 29, July 7, 10, 11, 12, 13, 14, 19, and 20, and August 9, 1999, is 32.25 hours. Again, the Court will reduce that amount by approximately half, to 16 hours. The total time that included tasks related to the *Epps* argument for the oral argument, as listed for October 29 and December 2, 3, 5, 6, and 7, 1999, is 18 hours. The Court will reduce that amount by half, to 9 hours. Overall, then, the Court will reduce the total hours claimed by Barton F. Stichman, Esq., in 1999 from 97.5 hours to 55.75 hours. The Secretary also contests the inclusion of attorney time spent preparing various other unsuccessful arguments to the Federal Circuit, but the Court finds the remainder of the appellant's arguments to be not unreasonable under all the circumstances.

Incidentally, the Court notes that the appellant's counsel has made an error in his fee application. On page 8, the total for expenses is listed as $799.11; the total of the listed items is actually $499.11. However, it appears that in calculating the total of the fee application ($58,691.54, comprised of $58,192.43 in legal fees plus expenses), the appellant's counsel actually did use the correct figure of $499.11, notwithstanding the misstated expenses total on page 8. As explained in Part II.D.1-2, the Court will reduce the hours claimed for the work of Edward Myers, Esq., in 1997 from 78 to 70 hours and for his work in 1998 from 84.35 to 45.6 hours. As explained in Part II.D.3, the Court will reduce the hours claimed for the work of Barton F. Stichman, Esq., in 1999 from 97.5 hours to 55.75 hours. The other totals remain the same, and the Court will calculate the fee at the rates proposed by the appellant's counsel and will reimburse the appellant for all expenses claimed.

### III. CONCLUSION

After consideration of the pleadings and a review of the record, the Court grants in part the appellant's EAJA application, in the amount of $47,098.97.

STEINBERG, *Judge*, concurring in part and dissenting in part: I join in the Court's opinion with the exception of part II.D.3. and the amount of the total reduction in part III. I cannot agree to the conclusion reached by the Court, in the exercise of its discretion based on the facts of this case,

14

to exclude *all* hours that the Court guesstimates were attributable to the appellant's argument that the Federal Circuit's opinion in *Epps v. Gober*, 126 F.3d 1464 (Fed. Cir. 1997), should be overruled. Nor do I find reasonable the Court's calculations that 41.75 hours were attributable to the *Epps* issue.

On the first point, the rules of the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) provide in Rule 35(a)(2):

> **Arguing to a Panel to Overrule a Precedent**
> Although only the court en banc may overrule a binding precedent, a party may argue, in its brief and oral argument, to overrule a binding precedent without petitioning for hearing en banc. The panel will decide whether to ask the regular active judges to consider hearing the case en banc.

FED. CIR. R. 35(a)(2). Although it is true, as the majority states, *ante* at 12-13, that the Federal Circuit pointed out that the panel could not overrule *Epps* in this case, that court's Rule 35(a)(2) specifically permits such argument to a panel as a method of reaching the en banc court. FED. CIR. R. 35(a)(2). Therefore, I do not believe that the appellant's attorney reasonably could have anticipated that such briefing to a panel of a potential en banc issue would be considered as unreasonable by *this* Court. In the future, it would seem, attorneys may wish to temper the amount of effort, or at least be prepared to accept less than full EAJA fees for such effort, devoted to presenting such arguments to Federal Circuit panels. But we are dealing with what was reasonable in the instant case, and, although I would not object to *some* reduction for the *Epps* matter – especially because some of the arguments presented may have been presented in other cases appealed to the Federal Circuit – I believe that this Court's decision to eliminate *all* such hours is unwarranted. This total reduction seems particularly unreasonable because soon after the Federal Circuit issued its opinion in *Hensley v. West*, 212 F.3d 1255 (2000), that court, sitting en banc, issued an order in *Brock v. Gober*, in which it set for oral argument the question of overruling *Epps*; it therefore appears that the *Epps* argument was far from "futile", as the majority suggests, *ante* at 13. *Brock*, 222 F.3d 988, 989 (Fed. Cir. 2000) (en banc).[1]

---

[1] With the enactment of the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096 (VCAA), on November 9, 2000, the issues set for oral argument in *Brock* were mooted and hence were never decided, and a panel of the Federal Circuit vacated our opinion in *Brock v. Brown*, 10 Vet.App. 155 (1997), and remanded "to allow [this Court] to consider the application of the VCAA". *Brock v. Principi*, No. 95-444, 2001 WL 324596 at *1 (Vet. App. Mar. 29, 2001) (single-judge order).

Regarding the number of hours, 41.75, that the Court disallows for the *Epps* arguments, the Court rejects approximately 50% of the 32.5, 32.25, and 18 hours that counsel spent working on the principal and reply briefs and preparing for oral argument, respectively. However, the EAJA application reveals that, with two exceptions (March 19 and June 29, 1999), the hours claimed involved multiple tasks or actually made no direct or indirect reference to the *Epps* matter. Although I find no basis for the 50% reduction, counsel for the appellant invited such arbitrary action by failing to provide adequate specificity in the fee itemization included in the application.

For the foregoing reasons, I dissent from the *Epps* reduction and, hence, from the calculation of the total amount reduced.