# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 03-1237(E)

Stephen Baldridge, Appellant,

and

No. 03-1549(E)

John M. Demel, Appellant,

v.

R. James Nicholson,
Secretary of Veterans Affairs, Appellee.

On Appellants' Applications for Attorney Fees and Expenses

(Argued March 1, 2005,                                    Decided    July 26, 2005   )

*Peter J. Meadows,* of Ft. Lauderdale, Florida, and *Daniel G. Krasnegor,* of Washington, D.C., were on the pleadings for the appellants.

*David J. Lowenstein,* with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Brian B. Rippel*, Deputy Assistant General Counsel; and *Christopher W. Wallace*, were on the pleadings, all of Washington, D.C., for the appellee**.**

Before IVERS, *Chief Judge*, and KASOLD and HAGEL, *Judges*.

HAGEL, *Judge*, filed the opinion of the Court. KASOLD, *Judge*, filed an opinion concurring in part and dissenting in part.

HAGEL, *Judge*: Before the Court is Stephen Baldridge's May 28, 2004, application pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (EAJA), for an award of attorney fees and expenses in the amount of $11,597.04. Also before the Court is John M. Demel's June 14, 2004, application for an award of attorney fees and expenses under EAJA in the amount of $3,922.91. In each case, the Secretary has filed a response in which he concedes that Mr. Baldridge and Mr. Demel are entitled to EAJA awards but disputes the amounts sought. Mr. Baldridge and Mr. Demel have

filed replies to the Secretary's response. Because Mr. Baldridge and Mr. Demel have satisfied the statutory requirements for awards, the Court will grant their applications. Because they have failed to justify the amounts sought, the Court, for the reasons that follow, will approve amounts significantly reduced from the amounts requested.

## I. BACKGROUND

Although the original claims of Mr. Baldridge and Mr. Demel are factually distinct, both were resolved in a similar manner before the Court. Mr. Baldridge's application for an award of attorney fees stems from a February 24, 2003, Board of Veterans' Appeals (Board) decision, in which he was denied service connection for a psychiatric disability and for Valium dependence. On April 30, 2004, the Court vacated the February 2003 decision and remanded the matters following a joint motion for remand filed on April 26, 2004, wherein the parties agreed that the Board decision was not supported by adequate statements of reasons or bases. Mr. Demel's application for attorney fees followed a joint motion for remand granted by the Court on May 12, 2004, based on an agreement between the parties that VA had failed in its duties to notify him of certain matters as required by the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096, and to assist him regarding his claim for service connection for hypertension. Mr. Demel had been denied service connection for hypertension in a Board decision dated May 1, 2003.

Both appellants also had similar representation before the Court. In Mr. Demel's case, a Notice of Appeal was filed with the Court in August 2003, and attorneys Daniel G. Krasnegor and Peter J. Meadows each filed a separate notice of appearance as counsel for Mr. Demel during September 2003. Similarly, Mr. Baldridge filed a Notice of Appeal in June 2003, and attorney Krasnegor filed a notice of appearance in late July; attorney Meadows filed a notice of appearance less than a week later. Attorney Krasnegor is a partner in the Washington, D.C., office of the firm Wright, Robinson, Osthimer & Tatum. Attorney Meadows is affiliated with the firm of Vose & Meadows in Ft. Lauderdale, Florida.

The Secretary's primary argument for reduction of the attorney fees in each of these cases concerns the nature of the dual representation by these two attorneys. Given the like nature of the issues to be resolved in determining the reasonableness of these fee awards, on January 5, 2004, the

2

Court ordered the consolidation of these cases and submitted the matters to a panel. On March 1, 2005, the Court heard oral argument in the consolidated case.

## A. Mr. Baldridge's Application

Mr. Baldridge requests a total EAJA award of $11,597.04: $9,758.23 in fees (64.8 hours at $150.59 per hour for attorney Meadows's services) and $29.50 in expenses incurred by attorney Meadows and $1,803.31 in fees (11.2 hours at $149.76 per hour for the services of attorney Krasnegor, 0.3 hours at $105.00 for Kisha D. Bush, and 0.9 hours at $105.00 for Erica M. Nantals) and $6.00 in expenses incurred by attorney Krasnegor. Baldridge Application, Exhibit A.

The Secretary, in his response, contends that the total fee awarded in the Baldridge case should be reduced to $6,181.10. Secretary's Response, Baldridge, at 4. Specifically, the Secretary argues that the Court "should deny the entire $1,809.31 for attorney Krasnegor's fees and expenses as being unreasonable, and reduce attorney Meadows['s] fees by 4.7 hours that relate directly to telephone conferences with attorney Krasnegor." *Id.* at 2. The Secretary further suggests that the Court reduce by one-half the 37.7 hours for time spent "conduct[ing] legal research," for "additional research," and for "brief outline" and "brief revision." *Id.* Finally, the Secretary urges the Court to deny the request for payment for 0.4 hours on April 4, 2003, for "detailed review of brief and litigation file" performed three weeks after the brief had been filed. *Id*. at 3-4. The Secretary argues that several factors are important for the determination of the reasonabless of fees in this case: (1) Both attorneys "are experienced practitioners in veterans benefits law," (2) both attorneys are employed at different law firms, (3) this case "did not involve any complex issues," and (4) attorney Meadows billed his time in blocks of "multiple hours with vague descriptions." *Id*. at 6. The Secretary further contends that "some additional work done by attorney Meadows was duplicative and unnecessary." *Id.* He also notes that "it is common practice for both attorneys to enter their appearances in the same case, while one does the bulk of the work" and suggests that a reduction in fees is warranted because this practice is "duplicative and unproductive" where the case is not complex. *Id.* at 8-9. Finally, the Secretary points out that attorney Meadows billed a total of 17.1 hours on a single day, March 11, 2004, and contends that "such billing smacks of unreasonableness." *Id*. at 12.

On July 30, 2004, Mr. Baldridge filed a reply to the Secretary's response in which he counters that, "[c]ontrary to the Secretary's position, it is reasonable to allow two experienced attorneys the opportunity to represent an appellant before this Court." Reply, Baldridge, at 4. He argues that "beyond the preparation of required pleadings, the time spent by attorney Krasnegor was limited to a review of the original [Board] decision to identify all possible errors[] and discussion of the proposed [j]oint [m]otion for [r]emand" and that "[h]aving a second pair of eyes review pleadings and allowing for lead counsel to discuss his ideas about a case are important techniques used in diligently representing one's client." *Id.* at 5-6. In response to the Secretary's argument that the resolution of Mr. Baldridge's appeal lacked complexity, he contends that "[a]t the start of a case, it is not in any way apparent how the case will ultimately be resolved" and that "even if one simple basis for remand is identified at the start of a case, counsel must nevertheless be prepared to address and argue all errors identified." *Id.* at 10-11.

## B. Mr. Demel's Application

Mr. Demel requests a total EAJA award of $3,922.91: $3,884.17 in fees (21.1 hours at $149.76 per hour for fees incurred by attorneys David E. Boelzner, Sandra W. Wischow, and attorney Krasnegor, 4.6 hours at $150.59 per hour for fees incurred by attorney Meadows, 0.3 hours at $105.00 per hour for fees incurred by Kisha D. Bush) and $38.74 in expenses. Mr. Demel asserts that his attorneys exercised billing judgment by excluding "time spent on administrative matters." Demel Application at 2-3.

The Secretary opposes Mr. Demel's application and argues that (1) the appeal was relatively simple, (2) the appeal did not involve complex issues, and (3) the work of attorneys Krasnegor and Meadows was duplicative because, given their high level of experience in veterans law, either attorney alone could have managed this appeal. Secretary's Response, Demel, at 6. The Secretary also asserts that attorneys Krasnegor and Meadows are employed at different law firms and that it has become common practice for these two attorneys to enter appearances as co-counsel. *Id*. at 8.

Mr. Demel responded by arguing that the work performed by attorneys Krasnegor and Meadows was reasonable and not redundant. He states that his attorneys have established a system for reviewing and developing cases that provides for more effective supervision of work and discussion of ideas and that the ultimate basis for the remand in this case does not render it

4

unreasonable to have more than one attorney.  Reply, Demel, at 5-8.  He further argues that any restriction of attorney fees because his counsel work in different law firms would be arbitrary.  *Id.* at 9.

## II. ANALYSIS

The Court has jurisdiction pursuant to 28 U.S.C. § 2412(d)(2)(F) to award reasonable attorney fees and expenses.  Mr. Baldridge and Mr. Demel each filed his respective EAJA application within the 30-day time period set forth in 28 U.S.C. § 2412(d)(1)(B) and their applications satisfy that section's content requirements. *See Scarborough v. Principi,* 541 U.S. 401, 404-05 (2004).  The Secretary does not contest that an award of fees is appropriate in these cases, and the Court finds that both Mr. Baldridge and Mr. Demel have met the statutory requirements that entitle them to an award of fees and expenses.  Because it is not in question that Mr. Baldridge and Mr. Demel are entitled to EAJA awards, the Court is left only to determine the reasonableness of the amounts sought.  *See* 28 U.S.C. § 2412(d)(2)(A); *Ussery v. Brown,* 10 Vet.App. 51, 53 (1997).

The amount of the fee must be determined on the facts of each case.  *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).  We must also bear in mind that, in awarding EAJA fees, courts "have a special responsibility to ensure that taxpayers are required to reimburse prevailing parties for only those fees and expenses actually needed to achieve the favorable result." *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 975 (D.C. Cir. 2004) [hereinafter *Role Models*]; s*ee Copeland v. Marshall*, 641 F.2d 880, 888 (D.C. Cir. 1980) (noting that, pursuant to fee-shifting statutes,"[w]here a fee is sought from the United States, which has infinite ability to pay, the Court must scrutinize the claim with particular care").  For the applicant's part, he or she is required to ensure that the request for fees is "in good faith and in reasonable compliance with judicial pronouncements." *Suozzi v. West*, 12 Vet.App. 339, 340 (1999).

### A.  Applicable Law

#### 1. Reasonableness of Fees

The burden of demonstrating the entitlement to and reasonableness of fees for which reimbursement is sought rests with the party applying for the fee award.  *See Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Hensley*, 461 U.S. at 437; *Andrews v. Principi*, 17 Vet.App. 319, 321 (2003).

5

As the Supreme Court of the United States explained in *Hensley*, the most useful and objective starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. 461 U.S. at 433. This starting point is generally advanced by the appellant in the form of an application for an award of attorney fees and expenses, designating the number of hours expended and the hourly rate for the work. *Id*. Although *Hensley* interprets a fee-shifting statute other than EAJA, the principles for determining reasonableness are essentially the same. *See Comm'r, INS v. Jean*, 496 U.S. 154, 161 (1990) ("[O]nce a private litigant has met the multiple conditions for eligibility for EAJA fees, the district court's task of determining what fee is reasonable is essentially the same as that described in *Hensley*."); *see also Hensley*, 461 U.S. at 433 n.7 ("The standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'").

The applicant, however, is not necessarily entitled under EAJA to be compensated for all time spent on the case. *See Ussery,* 10 Vet.App. at 53. The inquiry does not end once the applicant has compiled raw totals of hours spent because "[i]t does not follow that the amount of time actually expended is the amount of time reasonably expended." *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983) (quoting *Copeland*, 641 F.2d at 891). The Court, in making a determination as to the reasonableness of the fee request, possesses significant discretion. *See Chesser v. West*, 11 Vet.App. 497, 501 (1998). With respect to an EAJA application in any case, the Court's focus is not on whether a particular item in a billing statement represents a prudent action in the litigation of the appeal, but rather the Court must, within its discretion, consider whether each item listed may reasonably be billed to the government under EAJA.

Reasonable fees that an EAJA applicant may recover have been defined as fees that would normally be charged to and paid by a private client. *See Ramos*, 713 F.2d at 553-54; *Sandoval v. Brown*, 9 Vet.App. 177, 182 (1996) (noting that the Court awards reasonable EAJA fees where the fees are "those customarily charged to the client where the case is tried" (quoting *Oliveira v. United States*, 827 F.2d 735, 744 (Fed. Cir. 1987))). "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Hensley*, 461

6

U.S. at 434 (quoting *Copeland*, 641 F.2d at 891). The Court is therefore required to consider whether hours would properly have been billed directly to the client. *See Bowling v. Principi,* 15 Vet.App. 379, 385 (2002) (citing *Hensley,* 461 U.S. at 434). Essentially, then, an applicant for EAJA fees must treat the government as though it were a private client by exercising the same kind of billing judgment that an attorney would use in preparing a billing statement for a private client. *See Hensley*, 461 U.S. at 434. In composing a final billing statement, the lawyer is required to make a "good faith effort" to exercise "billing judgment" by eliminating from his billing records time that is "excessive, redundant, or otherwise unnecessary," just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. *Id*. Time can be excessive, for example, if the lawyer is inefficient or is becoming educated in the area of the law for which fees are sought. *See Ussery,* 10 Vet.App. at 53. Time may be redundant, if the same task is performed more than once or more than one person performs the same task. *Id*. We also note that the Court is aided in its determination if the application for fees identifies the nature and extent of deductions made "based on the exercise of billing judg[]ment." *Andrews,* 17 Vet.App. at 323.

## 2. Adequacy of Documentation

### i. Detail and Specificity in the Billing Statement

Specific documentation is necessary to support an application for fees under EAJA. 28 U.S.C. § 2412(d)(1)(B) (providing that "[a] party seeking an award of fees and other expenses shall . . . submit to the court an application for fees and other expenses . . . including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed"). Because of the importance of submitting evidence supporting the hours worked and rates claimed when a court determines reasonableness, the Supreme Court has stated that "[w]here the documentation of hours is inadequate," the court charged with ordering the payment of attorney fees "may reduce the award accordingly." *Hensley*, 461 U.S. at 433. Following that lead, the United States Court of Appeals for the D.C. Circuit (D.C. Circuit) recently discussed this issue and noted that "supporting documentation 'must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended.'" *Role Models*, 353 F.3d at 970 (quoting *In re Olson*, 884 F.2d 1415, 1428 (D.C. Cir. 1989) (quoting *United Slate,*

*Tile & Composition Roofers v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984)). In *Role Models*, the D.C. Circuit concluded that it was not possible to evaluate the reasonableness of billing records where attorneys lumped together multiple tasks into time entries. *Id*. at 971. The court consequently reduced fees accordingly. *Id*.

This Court has similarly held that for EAJA fees to be awarded in full, an applicant must submit evidence of hours worked in the form of a billing statement that is specific and detailed. *Andrews,* 17 Vet.App. at 321 (deciding that a significant reduction in hours billed was warranted where the attorney listed the time billed in increments in excess of three hours with vague descriptions of what occurred during those hours). Large blocks of time associated with either many tasks or a single task with only generalized descriptions such as "research" or "conference" are not specific enough to permit the Court an adequate basis for review and are subject to reduction. *See id*.; *see also Role Models*, 353 F.3d at 971 (reducing fee award where billing records lacked adequate detail or where they included generic entries such as "research," "writing," and time spent in conferences or meetings).

ii. Justifying Time Beyond What Is Normally Required for a Task

It is not enough, however, merely to provide detailed work records. In determining reasonableness, the Court must also scrutinize whether the time expended for any given, described task is appropriate. Therefore, appellants seeking fees from the government must justify any time in excess of what would be considered the normal time needed to accomplish a particular task by providing a detailed, specific explanation of why the time exceeded that norm. *Ramos*, 713 F.2d at 554 (explaining that courts "will evaluate hours spent on each task for reasonableness, and any expenditure of time that appears to go beyond a normal range must be justified by a detailed explanation"); *see also Role Models,* 353 F.3d at 972 (noting that where a case presents "a straightforward challenge to an agency's failure to comply with its own regulations," time records must be sufficiently detailed for the court to evaluate why the case may have required an unusually large investment of time).

Even the total number of hours billed on any given workday may become subject to this kind of scrutiny. For example, in *Ramos*, the Tenth Circuit discussed the effect of billing practices in the industry on determining reasonableness of hours billed on any given workday:

In determining which hours reported were reasonably expended and hence are billable to the adversary, the court should examine the total number of hours reported by each lawyer. While some private firm lawyers bill more than 2000 hours per year, studies indicate that 1400 to 1600 billable hours per associate and 1200 to 1400 per partner represents the per annum norm that can actually be billed. These totals break down to six to seven billable hours per day for a five day week. During trials and other times of unusual stress the number of billable hours no doubt increases considerably. These studies reflect that normal workdays for lawyers include time to read general mail and advance sheets, to engage in nonbillable conversations with other lawyers, and to indulge in coffee breaks and other personal activities. The court should question reported time significantly in excess of the norm.

713 F.2d at 553-54. The Court will scrutinize billing that exceeds expectations about what constitutes a normal amount of time to bill for one day. Therefore, if counsel bills a large number of hours in a single day, as attorney Meadows did when he billed 17.1 hours on March 11, 2004, on the Baldridge EAJA application, he must justify why that unusual expenditure of time on that day was necessary.

### iii. Billing for Non-attorney Work

Applicants are not permitted to bill for and collect fees for clerical work and the work of general support staff. Because of the assumption that "work done by librarians, clerical personnel and other support staff . . . [is] generally considered within the overhead component of a lawyer's fee," costs for such work are not properly charged to the government under EAJA. *Role Models,* 353 F.3d at 974 (citing *In re Olson*, 884 F.2d at 1426-27). Indeed, work that is purely clerical in nature may not be billed by any person, including attorneys. *See Role Models,* 353 F.3d at 973; *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982) (noting that paralegal expenses may be recovered under fee-shifting statutes "only to the extent that the paralegal performs work traditionally done by an attorney" and that "[o]therwise, paralegal expenses are separately unrecoverable overhead expenses").

Where they are not engaged in clerical or administrative work, those providing specialized services and paralegal services may be billed at an appropriate rate but such billing requires an explanation and justification that includes the education and experience of the individual for whom reimbursement is sought, the work performed, and the standard billing rate in that locale. *Role Models*, 353 F.3d at 970 (reducing the rates billed for paralegals and legal assistants where the

9

appellants failed to justify the requested rates by submitting information about the appropriate prevailing market rates or information about the education and experience of these assistants); *see Sandoval*, 9 Vet.App. at 181 (noting that work done by paralegals may qualify for payment under EAJA).

Billing for those other than lead attorneys must also explain the role of each person who is working on that case, specifying who those persons are and what their connection to the case is. *See Role Models,* 353 F.3d at 971-72 (explaining that reasonableness of fees billed by individuals cannot be evaluated without knowing who they are, rendering time records for unidentified individuals "manifestly inadequate"). In these cases, for example, where the attorneys included billing for Kisha D. Bush and Erica M. Nantals at a rate of $105.00 per hour, the Court is left to guess that they are paralegals based on their lower billing rate (and a reference to the use of an unnamed paralegal in the Demel application), knowing nothing of their education or experience. Baldridge Application, Exhibit A; Demel Application, Exhibit A.

### 3. *Reimbursement for Multiple Attorneys under EAJA*

#### i. Justification Requirements

Although we note that any appellant remains free to hire as many counsel as he or she wishes, the issue before the Court is not how many attorneys are permissible but rather how much of the fees charged by multiple counsel may be properly recovered under EAJA. As with any other item billed to the government, the applicant bears the burden of justifying the fees sought for multiple-attorney representation. This reasoning follows the guidance given in *Hensley*, where the Supreme Court discussed the fact that "[c]ases may be overstaffed, and the skill and experience of lawyers vary widely," but such variation places the burden on the counsel for the applicant to exercise billing judgment. 461 U.S. at 434.

We do not depart from the array of prior caselaw holding that there is no *per se* rule against the award of fees for multiple lawyers. For example, we have held that "the mere fact that two people researched the same motion does not indicate that they were researching the same issues, or that their efforts were duplicative." *Ussery,* 10 Vet.App. at 54 (citing *Sandoval,* 9 Vet.App. at 180). Other courts have reached similar conclusions. *See Rodriguez-Hernandez v. Miranda-Velez*, 132 F.3d 848, 860 (1st Cir. 1998) ("Time spent by two attorneys on the same general task is not, however, per se duplicative because careful preparation often requires collaboration and rehearsal

10

. . . ."); *Jean v. Nelson*, 863 F.2d 759, 772 (11th Cir. 1988) (recognizing that the "retention of multiple counsel in complex cases is 'understandable and not a ground for reducing the hours claimed' because 'the use in involved litigation of a team of attorneys who divide up the work is common for both plaintiff and defense work'").

However, while allowing for the possibility that "multiple representation can be productive," we must also be mindful of the fact that along with multiple attorneys comes "the danger of duplication, a waste of resources which is difficult to measure." *Coulter v. Tennessee*, 805 F.2d 146, 152 (6th Cir. 1986). Redundant hours are most likely to occur where more than one attorney represents a client, and in order for the fees associated with their work to be compensated, the application must demonstrate that multiple lawyers are not unreasonably doing the same work. *See Norman v. Hous. Auth.*, 836 F.2d 1292, 1301-02 (11th Cir. 1988). Put in other terms, in a case with multiple counsel, each counsel may be allowed fees under EAJA based on the distinct contribution of that individual counsel. For example, in cases involving multiple representation, those attorneys will invariably hold conferences between or among themselves about the case. Although some such conferences may be necessary, we must consider whether they are important enough to be compensated under EAJA because such conferences may constitute duplicative or redundant work. *See Roman v. Korson*, 1996 U.S. Dist. LEXIS 19956, at *24 (D. Mich. Nov. 15, 1996) ("[T]he Court does not believe that a private party would be fairly billed . . . for regular consultation between four or more attorneys each considering the same legal questions. As such, that time is not properly billed to the plaintiffs' adversaries as stated in *Hensley*."). In similar fashion, the fee applications in this case, particularly the Baldridge application, contain multiple notations about telephone conferences between the co-counsel, raising questions about the distinct contributions each attorney was making during these conferences and whether those contributions ought to be compensated under EAJA.

Several elements may be offered as justification for awards for multiple lawyers, including (1) the complexity of the case, (2) the need for specialized knowledge, (3) whether the case presents an important issue of first impression, (4) the magnitude of the tasks involved in the litigation, and (5) identification of the specific and distinct tasks assigned to each lawyer. *See Chesser,* 11 Vet.App. at 504 (disallowing compensation for general or background research to the extent that it related to the inexperience of counsel); *Sandoval,* 9 Vet.App at 180 (noting the importance of the complexity of issues and lack of caselaw on specific issues in determining the reasonableness of fees); *see also*

*Johnson v. Univ. Coll. of Univ. of Ala.*, 706 F.2d 1205, 1208 (11th Cir. 1983) (deciding that recovery of fees after retaining multiple attorneys "in a significant, lengthy employment discrimination case . . . is understandable and not a ground for reducing the hours claimed"); *Medlock v. Ortho Biotech*, 1997 U.S. Dist. LEXIS 1147, at *6 (D. Kan. Jan. 14, 1997) (noting that reasonableness of the use of multiple attorneys may be evaluated by looking to the length and complexity of the case).

To illustrate this principle, the Third Circuit explains that it often disallows "compensation for more than one lawyer performing either trial or office work," but it makes an exception for cases that present "multiple, complex legal questions" and that present issues of first impression. *Planned Parenthood v. AG*, 297 F.3d 253, 272 (3d Cir. 2002). In other cases, it will conclude that "the attendance of additional counsel representing the same interests as the lawyers actually conducting" the litigation is "wasteful and should not be included in a request for counsel fees from an adversary." *Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 943 (3d Cir. 1995). The Third Circuit also makes an exception to its rule in complex cases where the need for specialized knowledge may also justify the need for multiple counsel. *See Planned Parenthood,* 297 F.3d at 272.

Complexity must also be measured against a practitioner with reasonable experience. If the inexperience of an attorney results in the need for supervisory assistance, the increase in time expended may not be properly billed to the government. *See Ramos*, 713 F.2d at 554 (noting that the "inexperience of counsel" is distinguishable from "the complexity of a case" in determining the reasonableness of hours properly billed because "the adversary should not be required to pay for more than the normal time the task should have required"). Again, the rule does not disallow the use of multiple attorneys but seeks to compensate multiple attorneys in a manner that is reasonable given the constraints, complexities, and special issues of the case as a whole. Like the Third Circuit, we will not compensate multiple attorneys where the circumstances do not warrant so doing, and if fees are sought by more than one lawyer in a case, the applicant bears the burden of justifying multiple-lawyer compensation in conformance with the principles set forth in this opinion.

Considerations about the need for multiple counsel may also be impacted by the stage of the proceedings and the staffing practices of the adversary. We may look, for example, to how many lawyers the other side utilized in similar situations as an indication of the effort required. *See Ramos*, 713 F.2d at 554. Although the practice of the opponent in staffing a matter for litigation is

12

a consideration, the Secretary, who is, for all practical purposes, a party in every case before this Court, has a responsibility not shared by counsel representing individual clients: The Secretary must provide a consistent position to the Court in similar cases. Considerations about staffing also may vary based on the forum, that is, whether the case is at the trial or appellate level. However, we note that in our Court, the award of fees under EAJA concerns an appeal only, and we observe that the prosecution of appeals before this Court does not generally require teams of attorneys to divide the work. *See Johnson*, 706 F.2d 1205, 1208 (11th Cir. 1983) (explaining in a trial before a district court that "the use in involved litigation of a team of attorneys who divide up the work is common today for both plaintiff and defense work"). We note, therefore, that the argument used by Mr. Baldridge and Mr. Demel that the collaborative work by multiple counsel "mirrors that performed by" VA attorneys is in this case but one small and relatively insignificant consideration that does not outweigh a lack of justification regarding the factors listed above. Reply, Baldridge, at 7; Reply, Demel, at 7.

An application for fees under EAJA where multiple attorneys are involved must also explain the role of each lawyer in the litigation and the tasks assigned to each, thereby describing the distinct contribution of each counsel. *See Planned Parenthood,* 297 F.3d at 272 (holding that to establish the need for multiple counsel, prevailing parties "establish appropriate staffing by demonstrating that the various attorneys were assigned specific tasks"); *see also Johnson*, 706 F.2d at 1208 (explaining that "[a]n award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation"). Because the statute requires a "reasonable fee," there may be "circumstances in which the basic standard of reasonable rates multiplied by reasonably expended hours results in a fee that is either unreasonably low or unreasonably high" (*Blum*, 465 U.S. at 897), and if more than one attorney is working on a given case, the danger of an unreasonably high award is increased unless the applicant can show the distinct role of each counsel. In other words, if more than one attorney performs the same task, the EAJA applicant should not necessarily be compensated for it each time it was performed. *See Jean*, 863 F.2d at 772-73. The Tenth Circuit discussed this issue in *Ramos*:

> The more lawyers representing a side of the litigation, the greater the likelihood will be for duplication of services . . . . The court should assess the possibility that

13

reported hours include duplication by reviewing with particular care the number of lawyers present at hearings, depositions, and other discovery proceedings, and by evaluating the roles played by the lawyers in the litigation generally.

713 F.2d at 554. Similarly, we seek to guard against the possibility of awarding compensation for duplicative hours by requiring the applicant to specify the distinct contribution of each counsel and by reducing the award where the party has not made the distinctions clear. This requirement does not limit claimants to single representation but does potentially limit recovery of fees where work does not reflect each attorney's distinct role in the proceedings. *See Ward v. Kelly*, 515 F.2d 908, 912 (5th Cir. 1975).

ii. Documentation in Multiple-Attorney Cases

Because of the danger of waste and duplication in multiple-attorney cases, the requirement of adequacy of billing documentation becomes heightened. We must therefore consider multiple representation in the following manner: Whether "something about this case required so many lawyers expending so many hours" and whether "the time records contain so little information, [that] we have no basis for concluding that hours that appear to be excessive and redundant are in fact anything other than excessive and redundant." *Role Models,* 353 F.3d at 972.

For applications filed after the date of this opinion, the Court encourages applicants seeking EAJA fees in cases in which reimbursement is sought for the work of more than one attorney, to attach a single, consolidated, chronological billing statement to the full fee award requested. That single billing statement, to be most helpful to the Court, should further be in tabular form with entries listed in chronological order and depict the work done on the case on each date identifying the lawyer who did the work and must be signed by the lead counsel, who will be responsible for its accuracy and completeness. The lead counsel should sign under a certification that he or she has (1) reviewed the combined billing statement and is satisfied that it accurately reflects the work preformed by all counsel and (2) considered and eliminated all time that is excessive or redundant.

A single billing statement and signed certification by the lead counsel in a case with multiple-lawyer representation also provides the Court with an assurance that the counsel has made a final, coordinated attempt to ensure that the applicant has noted and eliminated any time, as is necessary, claimed for the work of a relatively inexperienced attorney or claimed for any other situation where work may be duplicative. *See Sandoval,* 9 Vet.App. at 181; *see also Jean*, 863 F.2d at 772 (relying

14

on the representations of counsel "that they had 'purged' their time sheets of unnecessary duplication"); *Action on Smoking & Health v. Civil Aeronautics Bd.*, 724 F.2d 211, 220-21 (D.C. Cir. 1984) [hereinafter *Action on Smoking*] ("[H]ours are not reasonably expended if an attorney duplicates work done earlier by another attorney, if an attorney takes extra time due to inexperience."). The single billing statement would place the responsibility to make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary squarely on the shoulders of the lead counsel for the applicant and eliminates the concern that one attorney may not have verified the contribution of another in situations involving joint representation. The Court notes that consolidated billing statements are routinely used where the lawyers involved are employed by the same entity.

The use of a single, consolidated billing statement is also in keeping with established principles concerning the importance of maintaining contemporaneous billing records. The federal circuit courts of appeals do not uniformly agree about whether or not contemporaneous billing records are required to support applications requesting attorney fees from the government. The First Circuit, for example, has held that "in cases involving fee applications . . . the absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance." *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 952 (1st Cir. 1984); *see Ramos*, 713 F.2d at 553 (holding that under a similar fee-shifting statute, attorneys who seek fees "must keep meticulous, contemporaneous time records to present to the court upon request"); *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983) (setting forth the requirement that "contemporaneous time records are a prerequisite for attorney's fees in this Circuit"); *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982) (requiring attorneys "who anticipate making a fee application" to "maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney"). Other circuits have held that "contemporaneous time records are not indispensable where there is other reliable evidence to support a claim for attorney's fees." *Jean*, 863 F.2d at 772 (11th Cir.); *Dennis v. Warren*, 779 F.2d 245, 249 (5th Cir. 1985) ("Although this Court has admonished counsel in previous cases that time records should be kept, we have not held that contemporaneous time sheets are indispensable."); *Bonnette v. Cal. Health & Welfare Agency*, 704

15

F.2d 1465, 1473 (9th Cir. 1983) (permitting recovery of attorney fees based "in part on reconstructed records developed by reference to litigation files and other records").

Although we decline to impose a requirement that where contemporaneous billing records are lacking, EAJA fees will automatically be reduced, we emphasize that, especially in multiple-attorney cases, the existence of meticulous and contemporaneous time records will facilitate the development of a single, complete, accurate, and specific billing statement for purposes of the fee application. These records would provide any lead counsel with the ability to supply evidence that the award sought is for time that is reasonably billed. *See Chesser,* 11 Vet.App. at 502 (noting the importance of counsel for the applicant's sworn affidavit as a "benchmark" for measuring the hours reasonably expended).

We further recognize that judgments about whether work is duplicative "must be made in light of the needs of the litigation as presented to the attorneys at the time the hours of service were performed" and not in terms of an "inquisition into exactly which hours were necessary for the precise result later obtained." *Roman*, 1996 U.S. Dist. LEXIS 19956, at *17. Therefore, we must refrain from evaluating in hindsight time expenditures in terms of what was strictly necessary; "[r]ather, the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990); *see Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) (stating that the "relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures"). Given this standard, where a lead counsel submits a single billing statement, that lead attorney has the opportunity, in hindsight, to consider whether the fees for which he or she seeks compensation were reasonable at the time that work was expended.

### 4. Method of Award Reduction

Each case must be reviewed on its own merit, and the Court (whether by single judge or by panel) has wide discretion to reduce individual fee entries. *Chesser*, 11 Vet.App. at 501. However, the Court in this case will not attempt to identify particular hours for disqualification but will exercise judgment and reduce all billings by an appropriate percentage. *See Hensley*, 461 U.S. at 436-37 (holding that although "[t]here is no precise rule or formula for making these

16

determinations," a court ordering the award of fees "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success" because of the wide discretion the court has in making this equitable judgment); *Comm'r, INS v. Jean*, 496 U.S. at 161-62 ("While the parties' postures on individual matters may be more or less justified, EAJA–like other fee-shifting statutes–favors treating a case as an inclusive whole, rather than as atomized line-items.").

Other courts have also followed this practice by reducing awards by percentage. *See Role Models,* 353 F.3d at 973 (reducing attorney hours billed by 50 percent because "[a] fixed reduction is appropriate given the large number of entries that suffer from one or more of the deficiencies we have described"); *Northcross v. Bd. of Educ.*, 611 F.2d 624, 637 (6th Cir. 1979) (stating that in cases with multiple counsel "we have approved the arbitrary but essentially fair approach of simply deducting a small percentage of the total hours to eliminate duplication of services"); *Roman*, 1996 U.S. Dist. LEXIS 19956, at *24 (reducing by 25 percent hours attorneys spent conferring "to avoid billings for duplicative or unnecessary work"); *see also Coulter*, 805 F.2d at 152 (affirming the district court's reduction by 50 percent the attorney hours judged to be duplicative); *Action on Smoking*, 724 F.2d at 220 (holding that where the fee application is deficient because "a request has been inadequately documented, or is excessive, we will not attempt to identify and eliminate particular hours" but will reduce by percentages to deal with deficiencies in the application).

This Court has similarly held that a mathematical approach should be avoided in reducing hours. *Vidal v. Brown*, 8 Vet.App. 488, 493 (1996). In practice, we have implemented that principle by reducing awards by percentage at times and by reducing specific hours by line item at other times, and often we have reduced awards by some combination of these two approaches. *See Hensley v. Principi*, 16 Vet.App. 491, 502 (2002) (reducing a portion of the fees requested by specific hours and reducing a portion of the fees requested by half because the billing statements were inadequately documented); *Teten v. Principi*, 16 Vet.App. 112, 119 (2002) (reducing by half fees requested for hours spent preparing briefs containing portions "devoted to nongermane contentions" and reducing by half expenses related to photocopying the same); *Jacobsen v. West*, 12 Vet.App. 546 (1999) (using discretion to award 80 percent of fees where the applicant would have prevailed on two of four claims appealed); *Vidal*, 8 Vet.App. at 493 (reducing as duplicative two-thirds of the time

17

attorneys spent on the reply brief but also reducing other specific time increments contained in the billing statement).

However, although departure from the percentage reduction is not prohibited, we do suggest that reducing awards in this manner is more in keeping with the idea of avoiding a mathematical approach because it allows the Court to look at each individual case as a whole and frees it from tinkering with any necessary reductions by individual hours and tenths of hours. Although, as the dissenting judge suggests, this method may be less precise, given the level of discretion that judges have in awarding EAJA fees (including the option of applying a line-item method of reduction), and the analysis the Court must provide to explain why any given application is deficient, there is no reason to conclude that overall percentage reductions are less equitable than individual line-item reductions. The Court must apply the law and ensure a fair outcome, which does not necessarily entail combing through each billing statement and tallying up tenths of hours as a green-eye-shaded auditor would do. The percentage method of reduction is also predictable insofar as it correlates to the magnitude of the deficiencies of the application. It further reinforces the burden placed by the law on fee applicants and provides them with an added incentive to be more precise in explaining why time spent is properly chargeable and why the fees for which they are seeking reimbursement are reasonable, so as not to incur the reductions that would necessarily follow an inadequately documented application.

We also believe that reducing the total amount by percentage is particularly appropriate here, where both applications contain billing statements from two different law firms, and in neither case do the attorneys make a declaration about having exercised billing judgment. Mr. Baldridge merely makes a vague statement about how "[a] reasonable attorney, exercising sound billing judgment, would charge for time spent on all matters included," and Mr. Demel asserts–incorrectly, in the Court's view–that "[i]n the exercise of sound billing judgment, no payment is requested for time spent on administrative matters such as copying, filing[,] or research into matters unrelated to the disposition of the case." Baldridge Application at 3; Demel Application at 2-3. Where even the attorneys who submitted the billing statements have failed consistently or reliably to indicate that they have eliminated exact portions of their billing statements that may have been duplicative or are otherwise not billable, the Court can better judge the reasonableness of the fees as a whole than it

18

can judge the reasonableness of the fees of individual hours billed. We will therefore evaluate the fee applications in these cases on the whole and reduce awards by percentage.

## B. Mr. Baldridge's Fee Award

The application for EAJA fees by Mr. Baldridge suffers from several of the deficiencies discussed above. Regarding attorney Krasnegor's fee, the Court observes that the fees sought by attorney Krasnegor are for a total of 11.2 hours of attorney time and that the time spent on this appeal by attorney Krasnegor amounts to a small portion of the 64.8 hours of attorney time expended by attorney Meadows. Although that fact alone certainly does not warrant granting Mr. Baldridge an EAJA award for the services of attorney Krasnegor, it may reflect, to some degree, that attorneys Meadows and Krasnegor attempted to avoid duplicative work. *See Norman*, 836 F.2d at 1301-02. It is not patently unreasonable for more than one attorney to work on a given case, but Mr. Baldridge's application fails to provide specific justification for why multiple representation was warranted to such an extent that the government should pay the second set of fees. *See Chesser,* 11 Vet.App. at 504; *Sandoval,* 9 Vet.App at 180; *see also Johnson*, 706 F.2d at 1208; *Medlock*, 1997 U.S. Dist. LEXIS 1147, at *6.

Each party in this case presents different arguments for why having two attorneys was or was not justified. Mr. Baldridge argues that having a second attorney working on the case made the process of "discussion" and "brainstorming" easier or more efficient, (Reply, Baldridge, at 6), but that fact alone does not justify the payment of the full fees. Such collaboration falls under the category of conferences that may (or may not) be necessary, but because they constitute duplicative or redundant work, are certainly not necessary enough to be compensated under EAJA. *See Roman*, 1996 U.S. Dist. LEXIS 19956, at *24. The Secretary argues that the fact that the matters were eventually disposed of by way of a consented-to notice remand automatically renders the matter "noncomplex," but this conclusion is made with the benefit of hindsight, which is always clearer than foresight. *See Wooldridge*, 898 F.2d at 1177*; Grant*, 973 F.2d at 99. Contrary to the Secretary's assertion, the fact that the matter came to a simple resolution does not indicate that attorneys Krasnegor and Meadows planned such an outcome from the start. However, we cannot conclude that a reasonable attorney would *require* a co-counsel for brainstorming, conferring, and reviewing the Board decision, and that all such matters are billable to the government absent some specific explanation as to why the particular circumstances of this case would require it. *See Halderman*, 49

F.3d at 943; *Medlock*, 1997 U.S. Dist. LEXIS 1147, at \*6.  We acknowledge that some complicated situations may require the use of multiple attorneys, but Mr. Baldridge has not demonstrated that this is one of them.

Also, at the time that attorney Krasnegor, on April 26, 2004, "[r]eview[ed]" the joint remand motion and "discuss[ed]" that motion with attorney Meadows, the parties had already agreed that certain matters on appeal would be remanded for the Board to provide an adequate statement of reasons or bases regarding VA's duty to notify.  The motion merely formalized that agreement, and such motions are common and uncomplicated.  Consequently, the Court finds attorney Krasnegor's review and discussion of that motion duplicative of attorney Meadows's work.  *See Medlock*, 1997 U.S. Dist. LEXIS 1147, at \*6.

Furthermore, regarding attorney Meadows's practice in this case of billing multiple hours at a time with vague descriptions of work performed during that time, the Court will reduce the amount awarded based on the fact that the billing statement contains intervals of time of three hours or more where the work performed is vaguely described.  *See Andrews*, 17 Vet.App. at 322-23.

Turning to the Secretary's argument that it "smacks of unreasonableness" to bill 17.1 hours in one day, we agree with the Secretary to the extent that such billing is not justified without a specific explanation of why so many hours in one day were billed for the case given the factors discussed in *Ramos* in part II(A)(2)(ii) of this opinion.  Although it may be possible that attorney Meadows performed these tasks precisely as listed, the Court cannot conclude that such billing is reasonable without adequate documentation to justify such an unusually large block of time billed in one day.  *See Ramos*, 713 F.2d at 553-54.

In addition, as discussed previously (*supra* at 9-10), we will reduce the amount to be awarded for time spent on clerical and administrative matters, including time spent receiving documents and "voicemail" and preparing forms.  *See* Baldridge Application, Exhibit A ("[R]eceive . . . [Board] decision," "prepare representation forms, set up files," "[r]eceive correspondence from client," "[r]eceive [designation of the record] and calendar", "[r]eceive . . . [a]ppellee's [m]otion for [r]emand," "receive voicemail from O[ffice of General Counsel] attorney re[garding counterdesignation of the record]," "[r]eceive granted motion from [C]ourt," "receive correspondence from client re[garding] waiver," "receive client's c-file," "[r]eceive correspondence from O[ffice of General Counsel] re[garding] c-file," "[r]eceive [C]ourt order," "[r]eceive . . . [the transmittal of the

record]," "[r]eceive [n]otice to file brief," "[r]eceive . . . motion granted from [C]ourt," "receive . . . [C]ourt order re[garding briefing conference]," "receive . . . order for [briefing conference]," "[r]eceive . . . proposed [joint motion for remand] and case file," [r]eceive . . . [joint motion for remand]," "[r]eceive . . . Court [o]rder for [joint motion for remand]").  The government is not required to pay attorney Meadows–or any of his employees–for clerical work. *See Role Models,* 353 F.3d at 973.

We will also reduce the amount to be awarded based on hours billed by attorney Krasnegor for the services of Kisha D. Bush and Erica M. Nantals, whose roles are not identified anywhere in the application.  *See* Baldridge Application, Exhibit A ("Receive message from client re[garding] status of case," "[t]elephone call to client re[garding] status of case," "[t]elephone call to client re[garding] status and merits of case," "[t]elephone call from client re[garding] status of case," "[t]elephone call to client re[garding] status and procedural aspects of case," "[c]ompile billing statement for EAJA [application]"); *see also Role Models,* 353 F.3d at 971-72 (explaining that reasonableness of fees for individuals cannot be evaluated without knowing who they are, thus rendering time records for unidentified persons "manifestly inadequate").  Even assuming that Ms. Bush and Ms. Nantals are paralegals, we lack enough knowledge about their experience and education to justify the fees sought for their work.  *See id.* at 970.

In sum, based on the totality of these deficiencies, we will, in our discretion, reduce the total amount requested, including fees and expenses, by one-third to account for hours that are duplicative, clerical, inadequately documented, or beyond the normal amount of work hours but lacking an explanation as to why those hours should be extended beyond the norm.  Accordingly, we will award Mr. Baldridge EAJA fees and expenses in the amount of $7,731.36.

C.  Mr. Demel's Fee Award

The application for EAJA fees by Mr. Demel is also deficient on several of the same grounds. Unlike the Baldridge application, the roles of the attorneys cannot be clearly delineated based on the number of hours each counsel worked.  Four attorneys billed time in this case, and attorney Krasnegor, who appears to have performed the role of lead counsel, billed time for 6.7 hours in total. Two attorneys affiliated with his firm, David E. Boelzner and Sandra W. Wischow, each respectively performed 7.8 and 6.6 hours of work.  For his part, attorney Meadows billed time for 4.6 hours in total.  The relatively even distribution of hours among these four attorneys raises serious questions

21

as to how much they attempted to avoid duplicative work. *See Norman*, 836 F.2d at 1301-02. Indeed, to the extent that attorney Krasnegor had at least two other attorneys in his firm who were apparently qualified to practice veterans benefits law, the need to obtain additional assistance from counsel outside of his firm is not readily discernible, demonstrating a clear lack of specific justification as to why the government should pay the full fees for all four counsel. *See Chesser,* 11 Vet.App. at 504; *Sandoval,* 9 Vet.App at 180; *see also Johnson*, 706 F.2d at 1208; *Medlock*, 1997 U.S. Dist. LEXIS 1147, at *6. Because his application for EAJA fees makes no attempt to explain how the attorneys working on this case performed distinct, nonduplicative contributions, it inadequately demonstrates reasons why all four attorneys should be able to collect full fees from the government under EAJA.

Further, this case appears to be one of relative simplicity, lacking complex issues or issues of first impression. Mr. Demel asserts that any conclusions about the complexity are made with the benefit of hindsight. However, he does not advance arguments as to why, even at the outset of the case, a reasonable attorney would have thought this case was complex enough to warrant the work of four attorneys. *See Grant*, 973 F.2d at 99. Without an explanation as to why four attorneys were necessary, we are unwilling to fully compensate Mr. Demel in a case that was from the beginning an uncomplicated case ultimately resolved in a simple and straightforward manner. *See Halderman*, 49 F.3d at 943; *Medlock*, 1997 U.S. Dist. LEXIS 1147, at *6.

As is the case in the Baldridge application, Mr. Demel includes in his application billing entries for administrative tasks, such as filing and serving documents, in combination with tasks properly billed to lawyers. *See* Demel Application, Exhibit A ("[D]raft and file [n]otice of [a]ppearance" "review and file notice of appearance," "[c]hecking docket; drafting and filing [n]otice of [a]ppearance," "draft, file, and serve counterdesignation of record," "[p]hone message from VA counsel," "[d]raft and file extension motion," "[r]eview VA counsel draft of joint motion, sign and return," "[d]raft and file EAJA application"); *see also* Demel Application, Exhibit B ("[R]eceive . . . [Board] decision," "prepare representation forms, set up files, correspondence to client with enclosures," "prepare, file[,] and serve [n]otice of [a]ppearance," "[r]eceive . . . [j]oint [m]otion for [r]emand"). As we did with the Baldridge application, we will reduce Mr. Demel's award in part because the government is not required to compensate attorneys for clerical and administrative tasks. *See Role Models*, 353 F.3d at 973. The Court must use its discretion to determine what would be

the appropriate time discounted from the billing statements because Mr. Demel did not itemize with appropriate specificity the billing statement to differentiate between administrative and lawyer tasks.

Two other problems with Mr. Demel's application concern inadequacy of documentation. Although the written application itself notes that services of a paralegal were included in the billing statement (which is more information than the Baldridge application provides), that paralegal is not specifically identified, nor is any education or experience set forth to justify the paralegal work. *See id.* at 971-72. Also, as attorney Krasnegor admitted during oral argument, some attorneys who billed time included on the EAJA application worked out of the Richmond, Virginia, office of attorney Krasnegor's firm. All three attorneys associated with that firm billed time in this case at a rate adjusted for the Baltimore/Washington, D.C., area on the Consumer Pricing Index. However, given that Richmond is not included in that metropolitan area, not all attorneys may properly be entitled to collect fees at that higher Baltimore/Washington, D.C., rate. Mr. Krasnegor has conceded as much.

Given the similarity of the deficiencies between the Demel application and the Baldridge application, and noting that the Baldridge application contains deficiencies that the Demel application does not (including more time that is inadequately documented and time billed beyond the normal amount of work hours but lacking an explanation as to why those hours should be extended beyond the norm), the amount of the reduction in Mr. Demel's case will be less than the reduction in Mr. Baldridge's case. Based on the deficiencies discussed with respect to Mr. Demel's application, we will reduce the total amount requested, including fees and expenses, by one-fourth to account for hours that are duplicative, clerical, inadequately documented, or billed at the improper rate. The fees and expenses awarded to Mr. Demel will therefore total $2,942.18.

D. Ethical Requirements for Multiple-Law-Firm Representation

When multiple lawyers seek EAJA fees in a single case, Rule 1.5(e) of the Model Rules of Professional Conduct may apply. Under Rule 4(a) of the Court's Rules of Admission and Practice, the Court has stipulated that "unless otherwise provided by specific rules of the Court, the disciplinary standard for practice is the Model Rules of Professional Conduct adopted by the American Bar Association on August 2, 1983, as amended." Because this Court has not provided a specific rule regarding fee agreements among multiple attorneys from different firms, the Model Rules are applicable here. Rule 1.5(e) provides as follows:

23

(e) A division of a fee between lawyers who are not in the same firm may be made **only if**:
 1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation;
 2) the client agrees to the arrangement, including the share each lawyer will receive, **and the agreement is confirmed in writing**; and
 3) the total fee is reasonable.

MODEL RULES OF PROF'L CONDUCT R. 1.5(e) (2003) (emphasis added)**.** We recognize that there may be some question regarding whether this rule applies to fee division in pro bono cases. *See* ABA Comm. on Professional Ethics and Professional Responsibility, Formal Op. 93-374 (1993) (discussing applicability of ethical obligations when lawyers share fees in a pro bono context and where court-awarded fees are paid by the prevailing party; noting that "careful scrutiny [by the Court] of any fee paid eliminates any remaining possibility of speculation for financial gain" by the attorneys). Consequently, we stop short of holding today that Rule 1.5(e) applies strictly in cases like this one. However, we believe that the disclosure contemplated by the rule is good practice and is consistent with fully informing the client regarding the nature of the relationship among attorneys providing representation.

### III.  CONCLUSION

Upon consideration of the foregoing analysis and the pleadings of the parties, Mr. Baldridge's EAJA application is GRANTED in the amount of $7,731.36. Mr. Demel's application is GRANTED in the amount of $2,942.18.


KASOLD, *Judge*, concurring in part and dissenting in part. Although I concur with much of the majority opinion, I respectfully do not believe it is appropriate in this case to apply an across-the-board percentage reduction to the requested EAJA fees; nor do I believe we should suggest detailed procedures for EAJA applications outside of our normal rule-making authority. For the reasons stated below, I dissent with respect to sections II.A.3.ii and A.4, II.B, and II.C of the opinion.

At the outset, I re-emphasize the conclusion of the majority that the argument presented by both appellants – that the approach undertaken by counsel in managing these cases justified an award of attorney fees because the approach mirrored the internal working procedures of the

Secretary in handling cases – is unpersuasive. *Ante* at 13-15. The prudential requirement that the Secretary maintain consistent positions before the Court combined with the staffing needs of the Secretary's General Counsel, who handles thousands of cases and supervises scores of attorneys, and who is charged by law with representing the Secretary before the Court, 38 U.S.C. § 7263(a), renders any comparison inapposite.

With regard to the across-the-board reduction of the entire EAJA fee sought, including expenses, that was applied in these cases by the majority, I note that this approach is inconsistent with the guidance from the U.S. Supreme Court requiring courts to provide a concise but clear explanation of the reasons for reducing EAJA fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 436-37, 438 (1983) (holding that a court ordering the award of fees "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success" and the court needs "to provide a concise but clear explanation of its reasons for the fee award"). Moreover, the across-the-board reduction of an entire EAJA fee request has not been used by any U.S. court of appeals since *Copeland v. Marshall*, 641 F.2d 880, 903 (D.C. Cir. 1980) (en banc) (flat reduction to EAJA request permitted under limited facts of the case), which predated *Hensley*, *supra*. *See*, *e.g.*, *Heiar v. Crawford County*, 746 F.2d 1190, 1205 (7th Cir. 1984) (arbitrary percentage reduction of entire fee rejected); *Prandini v. National Tea Co.*, 585 F.2d 47, 52 (3d Cir. 1978) (court "may not reduce an award by a particular percentage or amount (albeit for justifiable reasons) in an arbitrary or indiscriminate fashion") (discussing *Hughes v. Repko*, 578 F.2d 483 (3d Cir. 1978)).

Although an across-the-board percentage reduction can be permissible as to attorney's fees (as opposed to an entire EAJA fee request), it has been limited to situations where more focused reductions are not practical, such as when billing statements are extensive or have multiple deficiencies, *see*, *e.g.*, *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004) (reduction of total hours billed by 50% appropriate where billing statement was marked by pervasive deficiencies); *Action on Smoking & Health v. Civil Aeronautics Bd.*, 724 F.2d 211, 220 (D.C. Cir. 1984) (percentage reduction of hours billed by individual attorneys appropriate where billing statement contained excessive entries or was inadequately documented), or the application is voluminous, *see*, *e.g.*, *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983) (explaining that in cases containing "voluminous fee applications" court has ability

25

to make across-the-board percentage cuts in hours), or individual claims were not separable, *see*, *e.g.*, *Diaz-Rivera v. Rivera-Rodriguez*, 377 F.3d 119, 127 (1st Cir. 2004) (reduction of total hours by one-third appropriate where hours for individual claims were not separable). Percentage reductions are also appropriate when duplication is a serious or complicated problem. *See*, *e.g.*, *Coulter v. Tennessee*, 805 F.2d 146, 149 (6th Cir. 1986) (reduction of specific blocks of time by 50% allowed where duplication was a "serious problem"); *Northcross v. Bd. of Educ.*, 611 F.2d 624, 636-37 (6th Cir. 1979) (reduction of total number of hours by a percentage is arbitrary but essentially fair method to eliminate duplication for multiple attorneys in complicated cases).

I do not agree with the majority that our case law supports an across-the-board percentage reduction of the entire EAJA fee request in this case. Up until today, the precedential opinions of this Court have reserved the across-the-board percentage reduction for cases involving multiple claims for which success was not achieved on all of the claims, and then only as to the attorney fees requested. *See*, *e.g.*, *Jacobsen v. West*, 12 Vet.App. 546 (1999); *Smith v. Brown*, 8 Vet.App. 327 (1995). In the other cases relied on by the majority, a percentage reduction in the EAJA fee request was targeted to those portions of the billing statements that were inadequately documented, *Hensley v. Principi*, 16 Vet.App. 491, 502 (2002), or reflected work that was not germane to the case, *Teten v. Principi*, 16 Vet.App. 112, 119 (2002), or were duplicative, *Vidal v. Brown*, 8 Vet.App. 488, 493 (1996).

Moreover, even when a percentage reduction of attorney fees is necessary as a practical matter, the Court has cautioned against using a straight mathematical formula; i.e., EAJA fees should not be reduced by one-third solely because one-third of the claims on appeal were denied. *See id*. (citing *Smith*, 8 Vet.App. at 329). The reduction in EAJA fees must be based on analysis of the work done that is related to the successful claims. *See Hensley*, 461 U.S. at 436-37; *Smith*, *supra*. Accordingly, I take exception to the majority's assertion that "the Court can better judge the reasonableness of the fees as a whole than it can judge the reasonableness of the fees of individual hours billed." *Ante* at 19-20. The merits cases underlying the EAJA applications in these cases do not involve success on less than all of the appellants' claims, and the EAJA applications and billing statements are not so deficient that the Court could not identify the separate or duplicative contributions of the few attorneys involved. Thus, there is no need to apply an across-the-board percentage reduction that necessarily results in an indiscriminate reduction in the EAJA fees

requested by the appellants in these cases. A more precise method of reduction would not be unduly burdensome and it could, and should, be applied. *See Jacobs v. Mancuso*, 825 F.2d 559, 562 (1st Cir. 1987); *Copeland*, *supra*.

I further note that, although the majority decision describes the deficiencies in the individual billing statements in each case, it is impossible to deduce how the majority arrived at the specific across-the-board percentage reduction it applies. Although we are told why one fee request is awarded at a lesser rate than the other, no basis for understanding is provided as to why one-third and one-fourth reductions are applied in these cases. Why not one-half and one-third? The continued application of this across-the-board percentage reduction in determining EAJA-fee reductions, particularly given our single-judge appellate authority, will inevitably lead to wholly unpredictable, and likely inequitable, results.

Finally, although I appreciate the majority's desire to streamline the billing statements submitted in cases involving multiple attorneys, I question the appropriateness and effectiveness of suggesting in this case detailed procedures that two judges of the Court might prefer, particularly when the Court has established rule-promulgating procedures that generally include the participation of our Rules Advisory Committee and other interested parties. *See* 38 U.S.C. § 7264(a); 28 U.S.C. § 2071(b); U.S. VET APP. R. 40(a). I believe the Court, the bar, and the parties would be better served by following our normal practice.